# THE SUPREME COURT

### OF THE

# STATE OF ILLINOIS,

### OF CASES DETERMINED. AT

## NOVEMBER TERM, 1861, AT MOUNT VERNON.

---

THE OHIO AND MISSISSIPPI RAILROAD COMPANY, Plaintiff in Error, *v.* FRANCIS MUHLING, Defendant in Error.[*]

### ERROR TO CLINTON.

The responsibility of a railroad company for the safety of its passengers, does not depend on the kind of cars in which they are carried, or on the fact of payment of fare by the passenger.

If the passenger is lawfully on the cars, the company is bound to carry him safely, whether he has paid his fare or not, but if he refuses to pay on demand, the company may eject him from the train.

THE defendant in error sued the Ohio and Mississippi Railroad Company, in the Circuit Court of Clinton county, for injuries received on one of the trains of that company.

The first count of the declaration avers, that plaintiff was a work-hand in the employ of the defendant, on the 29th of June, 1854, and was, as such work-hand, on the cars· of defendant, to be safely carried from Shoal Creek station, in Clinton county, to a point at or near Carlyle prairie, in said

---

[*] This case came to the hands of the Reporter too late to be inserted in its proper place, in volume twenty-seven of these Reports.

2

county. Plaintiff avers, that the trestle bridging across Shoal creek, in said county, was built in so unworkmanlike, insufficient and unsubstantial a manner, that, under the weight of the passing cars, the bridge gave way and fell while the plaintiff was on board said cars, and said cars were precipitated to the ground below, whereby plaintiff was grievously injured in body and put to great expense for cure, and disabled for work for a long space of time.

The second count avers, that plaintiff was a passenger on the cars of defendant at the date aforesaid, to be securely carried on a certain journey, to wit, from said Shoal Creek station to the end of the track of the railroad at or near Carlyle prairie, in said county. Plaintiff, as in first count, avers defective bridging or trestle work, the breaking down of the work under the burden of the cars, and the consequent injury to plaintiff.

The third count avers, that plaintiff was a passenger received by defendant, to be carried safely from said Shoal Creek station, in Clinton county, to a point east of Beaver creek, in said county. Plaintiff, as in previous counts, avers defective bridging and consequent injury, while proceeding from said Shoal Creek station to the end of the track of said railroad, in Carlyle prairie. Plaintiff says he sustained damages in the sum of $25,000.

The case came finally to trial at June term, 1858, of said court, and verdict and judgment for plaintiff in the sum of $1,500.

On the trial, *Halthouse*, for plaintiff, testified, that he came to the place of the accident, about an hour after it occurred; trestle work down, and four or five platform cars loaded with iron down off the track; found a man's hand among the bars of iron; saw a man in the cars covered up, that he took to be plaintiff.

*William Young* testified, that he was on the train at the time of the disaster, 28th June, 1854. Did not see plaintiff on the train; was on the tender when the accident occurred, and jumped off and ran back; saw a man with his hand cut off; five cars off; nineteen men on the train, pretty much

men that belonged to the road—all such, as far as witness knew. At that time the passenger cars ran east from Illinoistown as far as Trenton. From Trenton, construction cars ran east to the end of the road. Witness was then in the employ of defendant as carpenter. The company took passengers at that time on construction train for pay. The trestle work was not substantially made; it was insecurely constructed. That train put off a reaper at Shoal Creek. Passengers frequently passed back and forwards. I went to Levi Edmunds immediately, to send a messenger for the mail train. In crossing the trestle work, the engine slacked speed and ran four or five miles per hour, at a safe rate and cautiously. Iron was delivered by the cars east of the trestle work the day before. The track was finished one-quarter of a mile east of the trestle work. Witness, and several hands, were on their way to finish the trestle work at Carlyle.

*B. Rouse* said he lived near Shoal Creek station; plaintiff boarded with him at the time of the accident. Plaintiff was helping the engineer when they were surveying the road. Plaintiff had quit work for the company two weeks before the accident because they would not pay him. Plaintiff had to go to Trenton, and the cars would not stop as they came back at Shoal Creek, so he got on as the train went east. They stopped at Shoal Creek as the train went east and put off a machine, and plaintiff jumped on because the cars would not stop when returning west. Witness loaned him money to pay his passage. People had to pay if they went even on a hog car. Witness before paid his passage and freight to Sugar Creek, and they left him at McDonald's shanty. Two or three months afterward, plaintiff paid back the ten dollars loaned. Plaintiff went for witness to get flour at Trenton or Summerfield. He gave him ten dollars to pay for flour, passage and freight. The grist-mill at Trenton was not then finished. Plaintiff knew at the time that the train would not stop for passengers on its return. When he paid him the ten dollars, he told him to pay for the flour with it; that he was to get it at Trenton, Summerfield or Lebanon.

*F. Wintig* said, that at the time of the accident he went to

Shoal Creek. When he got there the cars had started; saw plaintiff on the train, and first after he was hurt. His hand was cut off near the wrist. On Sunday, three or four days before he was hurt, he told me at my house that he was working for Brown on the road.

*Garvin* testified, that after the track was completed to Carlyle prairie, they brought passengers there, who got to Carlyle by hacks.

*Dr. Knapp* said, he was called to see plaintiff after the injury. He sustained no other injury except losing his hand.

This was all the evidence given for plaintiff.

Defendant then called *Levi Edmunds,* who said the accident happened about June 29, 1854. Was at the scene of the disaster; saw Miles, the conductor, and plaintiff, in the same box car; both hurt. I got there half an hour after the accident. The first train that passed over the trestle work was the day before; it took over a shanty and some iron rails. The second train must have passed over when the trestle work fell down. Saw plaintiff drive pegs on the road for Brown, two days before the accident. There were no regular trains beyond McDonald's shanty, which was eight or nine miles west of the trestle work. The hands at work on the road were taken on the construction trains free.

*Miles* testified, that he was conductor on the train at the time of the accident, and had control of the construction train; had passed over the trestle work but once before. I had seen plaintiff there frequently before riding to and from his meals. He was employed as axeman on the road. Did not know he was on the train at the time until after the accident. Supposed he got on to go to his work at the east end of the track. We had never before this accident taken pay for passengers beyond Shoal Creek station, one and three-fourths miles west of trestle work. I saw plaintiff at work two or three days before, under Brown.

*Brown* testified, that he was employed by the company as leveler of the track of the road at and before the accident. Plaintiff worked as axeman from the last of May until the 27th of June. He was reported as having a chill on the 28th of

June, and the accident happened on the 29th of June, and plaintiff drove stakes under the direction of witness on the east end of the track, beyond the trestle work, on the 27th of June, where witness was engaged when the accident occurred.

This was all the material evidence in the case.

The court gave the following instructions for plaintiff:

1.   That an employee is entitled to recover damage against his employer, although the injury of which he complains was caused by the carelessness or negligence of another employee, if they are not employed in the same line of business.

2.   Although the jury may believe, from the evidence, that the plaintiff was in the general employ of the company, the defendant, yet if, on the day the accident happened, he was not employed for the company, but was on his own business or that of another, traveling on the company's cars, he is in the eye of the law a passenger, and the jury must find for the plaintiff such amount as they think will compensate him for the injury, not exceeding $25,000, if they are satisfied the accident happened by the carelessness of the company in the construction of the trestle work, without any negligence on the part of the plaintiff.

3.   That if the jury believe, from the evidence, that the plaintiff went on the cars as a passenger expecting to pay his fare, it matters not whether he paid it at the time the accident happened; and that the same was produced by the negligent manner of constructing the trestle work, and without negligence of the plaintiff, they must find for plaintiff; and if they believe that the said accident happened through the carelessness and negligence of the said company, then in that case the plaintiff should recover.

That it does not matter in which direction plaintiff started on the cars, if the jury believe, from the evidence, that he was on the car as a passenger on his own business or that of another, and unable to pay his passage, if the accident which injured him was caused by the negligence of the company, and not caused or contributed to by himself at the time it occurred.

The court, for defendant, gave the following:

The court is requested to instruct the jury, that if they believe, from the evidence, that the plaintiff was not, at the time of the accident, a passenger on the cars, but was a laborer for defendant, going to his work at the end of the track, or riding on the cars without pay, or being liable to pay, then the jury should find for the defendant.

Unless the jury is satisfied, by the evidence, that the plaintiff, as he alleges in his declaration, was a passenger on the cars for reward paid, or to be paid, then the jury is bound to find for defendant.

If the jury believe, from the evidence, that the plaintiff got on the cars to go west and not east, as stated in the declaration, then they should find for the defendant. (Refused.)

If the jury believe, from the evidence, that B. Rouse, a witness for plaintiff, swore falsely that the plaintiff was not in the employ of defendant for two weeks before the accident happened, knowing the contrary was true, then the jury may disregard the remainder of his evidence ; but, nevertheless, the credibility of said witness is a proper matter for them to weigh ; if they believe any part of his evidence true, they may give it credit.

If the jury believe, from the evidence, that the injury done plaintiff arose in part from his own negligence at the time, which caused the injury, then they are bound to find for defendant.

Unless plaintiff has proved such a case substantially as is alleged in his declaration, the jury are bound to find for defendant.

After verdict, defendant moved for new trial, because verdict was contrary to law and evidence, and because the court gave improper instructions for plaintiff, and refused proper ones for defendant.

The court overruled motion for new trial, and defendant at the time excepted.

The errors assigned are:

1. The verdict is without evidence. There is no proof that the defendant, the Ohio and Mississippi Railroad Company, was possessed of, or the owner of the railroad and loco-

motives and cars thereon, or that they owned the road, or had built the bridge or owned it, or had anything to do with the road; or that those managing the train were employed by, or were agents and employees of the Ohio and Mississippi Railroad Company: no proof that the injury occurred in Clinton county, in Illinois, or anywhere else.

2. The proof fails to support material averments in the declaration as to the direction of the journey the plaintiff was taking, and as to his being a passenger.

3. The proof shows overwhelmingly that plaintiff was a servant in the common business of constructing and maintaining a railroad. The verdict is, therefore, contrary to the evidence, and also contrary to law.

4. The verdict was contrary to instructions. The first instruction, the second, and the last, for defendant, should have secured a verdict. The first and second grew directly out of the evidence, and were supported by it.

5. The first instruction for plaintiff is not the law. The fourth instruction for plaintiff was erroneous, and calculated to mislead the jury, and divert their attention from the conflict between the declaration and proof.

6. The court erred in refusing the third instruction for defendant. It was a material averment in the declaration that plaintiff was going to Carlyle prairie.

7. The court therefore erred in overruling the motion for a new trial, and in entering judgment on the verdict.

8. The plaintiff does not aver in his declaration care and no want of prudence on his part, and the proof shows that he himself assumed manifest risk in mounting a construction train and exposing himself to probable danger. The judgment should be reversed for the above reasons, and because there is no allegation and no proof that those who built the bridge were incompetent, or that defendant knew that they were, or that the bridge was insecure and insufficient, or that defendant but for neglect might have known it.

WILLIAM HOLMES, for Plaintiff in Error.

The case must be considered under two aspects : 1, The right of the plaintiff to recover, if he was a *servant* of the company ; 2, Whether he has established his cause of action if he was a passenger.

The latter point will be considered first.

I. In order to recover as a passenger, he must prove his case. He must make out a proper case in his declaration, and he must support it by proper evidence in all material points. He cannot make out one case in his pleadings, and recover upon another made in proof. Especially must he prove as well as aver, whatever goes to the gist of the action. He must prove that he was a passenger. He must prove that the defendant, the railroad company, was possessed of, or the owner of the railroad and locomotives and cars thereon, and that they had built· the bridge or owned it, and were in control of the road and trains generally, either through themselves or agents, and that those managing the train were employed by, or were the agents and employees of the Ohio and Mississippi Railroad Company. There are material allegations on these points in the declaration, and they must be proved, otherwise the plaintiff cannot recover. *Illinois Central R. R. Co.* v. *Cox*, 21 Ill. 20 ; *Moss* v. *Johnson*, 22 Ill. 633 ; *Ohio and Mississippi Railroad Co.* v. *Brown*, 23 Ill. 94 ; 1 Chitty, 1, 59, 379 ; Stephen's Pl. 302, 325 ; Gould's Pl., ch. 4, secs. 7, 13.

There is a failure in proof of the above points. In no way has the plaintiff in his proof connected the defendant with the railroad, or trains, or that defective bridge, nor has he proved that any superintendent or contractor or workman of defendant built the bridge, as alleged, insecurely and unsubstantially.

It should be noticed here that plaintiff has not supported his repeated averments as to the direction of the journey he was taking. He has by his particularity and repetition of the description of his destination, made the averments on this point material. He seeks in his proof to make it appear that he was going in another direction. This matter becomes im-

Ohio and Mississippi R. R. Co. *v.* Muhling.

portant in connection with the inquiry to be considered below —whether or not he was a passenger or servant.

Plaintiff also fails to support his allegation that he was a passenger. The only witness on this point is Bernard Rouse. His testimony is contradicted by four witnesses, one of them his own witness. Contrasting the testimony of Rouse with the thrice-repeated declaration of plaintiff that he was going to Carlyle prairie, it can scarcely be doubted that the evidence was suborned for the purpose of evading the principle protecting the master in such cases. On the train were nineteen fellow-workmen of plaintiff. He does not produce one of them to support Rouse. The testimony of the conductor is, that never had they carried passengers beyond Shoal Creek station, nearly two miles west of the point where the cars fell through the bridge. There is no proof that there were any passengers on the train. It was a construction train, loaded with iron. But one train had ever crossed the bridge in question before. There is no proof that plaintiff paid any fare, or offered to pay any. The train was, in fact, as proved, composed of platform cars loaded with iron, and about twenty work-hands, proceeding upon the cars to their work. Taking these facts, in connection with the declaration of plaintiff, that he was going to Carlyle prairie, and, as alleged in his first count, that he was going as a work-hand, there can be no doubt that plaintiff has failed to prove that he was a passenger.

The testimony of Rouse on this point was an after-thought, contradicting the declaration, false, and doubtless known to be false, for he must have known that he testified falsely when he said that plaintiff had left the employ of the company two weeks before the accident. An examination of the evidence will convince any one of this. As an injured passenger, then, plaintiff has not made out such a case as entitles him to a recovery.

II. Has he made out a case as a *work-hand*, such that he can recover ?

That he was a servant employed in the business of constructing the railroad cannot be doubted. Four witnesses swear that he was a servant engaged in certain work on the

road—they saw him at work two days before the accident. One of his own witnesses swears that he told him he was at work on the road the Sunday before. Brown, who employed him, said that he was at work two days before—that the day before he was reported to him sick with chills ; and it is reasonable to suppose that when he appeared on the day of the accident with his fellow-workmen on the train, he had come out to go to work up the road. His declaration supports this presumption, in the three counts. In one of the counts he says he was going as a work-hand, and he doubtless told the truth when he so declared. He says, in the three counts, he was going east of Shoal Creek, to the very spot where he had been at work, and where his fellow-workmen were thus engaged. If he was in fact going elsewhere—if he was going to Lebanon, or Summerfield, or Trenton, it was easy and most natural that he should say so. The fact that he does not so say, taken in connection with other testimony, suggests that Rouse is not to be believed, and that plaintiff was a servant, and received his injury while in the common business of his employer.

Can he recover for injuries received through the carelessness or negligence of his fellow-servants ?

On this point the general principle is settled, that in such cases the master is not liable. The English courts, those of Vermont, Massachusetts, Connecticut, New York, Pennsylvania, South Carolina, Georgia, Louisiana, and Illinois, support it. This court, in *Illinois Central Railroad Co.* v. *Cox,* 21 Ill., and in *Moss* v. *Johnson,* 22 Ill., has considered this doctrine elaborately, sustaining it by just reasoning, and with copious references to English and American authorities, and the question is therefore not debatable here.

The exceptions to the doctrine, or limitations upon it, are : when there has been fault on the part of the master in the selection of his servants, or continuance of them in service after their incompetency was known, and also in employing unsafe machinery, etc., knowingly.

But the general doctrine is, that the servant voluntarily and with his eyes open enters the service and assumes all the risks

incident to the service, and this includes all the hazards to which he is exposed—an insecure and imperfect road, defective machinery, unsubstantial bridging, and negligence of fellow-servants.

A limitation has been attempted to be put upon this doctrine in two particulars, to wit:

1. When the servants are in different grades of service—one subordinate to another; or in different departments of the business. But the effort to make the distinction has met with no favor in the courts. On this point see *Murray* v. *South Carolina Railroad Co.*, 1 McMullan, 250; *Farwell's Case*, in 4 Metcalf, 60; *Hutchinson's Case*, 5 Exch. 341; *Wigmore* v. *Jay*, ib. 352; *Wiggell* v. *Fox*, 36 L. & E. 486; *Albro* v. *Agawam Canal Co.*, 6 Cush. 75; *Gilshannon* v. *Stony Brook Railroad Co.*, 10 Cush. 228; *Sherman* v. *Rochester and Syracuse Railroad Co.*, 15 Barbour, 574; *Scott* v. *Mayor of Manchester*, 38 L. & E. 477; *Honner* v. *Illinois Central Railroad Co.*, 15 Ill. 550; *Illinois Central Railroad* v. *Cox*, 21 Ill. 20.

2. When there is defective machinery, or bridges, or the like. The doctrine on this subject is settled too. The above cases of *Honner* and *Moss*, decided by this court, fully dispose of the question. The master does not warrant the seaworthiness of a ship, nor the perfection of his carriages, or cars, or machinery, or bridges, or scaffoldings. He is liable only in the event of his *knowledge* of the defects, and the *ignorance* of them by the servant. If both know the defects, the master is not liable. If the defects are secret, and unknown to master and servant, the former is not liable. If they are patent, the servant may know them as well as the master, and if he chooses to remain in the service notwithstanding, he must bear all consequences. On this subject see cases of *Honnell* v. *Illinois Central Railroad*, 15 Ill. 550; *Moss* v. *Johnson*, 22 Ill. 111; *Couch* v. *Steel*, 24 L. & E. 77; *Skip* v. *Eastern County Railroad Co.*, 24 L. & E.; *Wigmore* v. *Jay*, 5 Exch. 352; Pierce on Railroads, 294; *McMillan* v. *Sar. and Wash. Railroad Co.*, 20 Barbour, 450; *Noyes* v. *Smith and Lee*, 2 Williams (Vt. R.) 59; *Priestley* v. *Fowler*, 3 M. & W. 1.

It is important to remark in this connection that *knowledge* must be *averred* and *proved*. The above cases support this.

In this case the plaintiff's declaration is defective in proper averments as to the *known* insecurity of the bridge, or the known incompetency and unfitness of the builder of the bridge, and there is no proof on the subject. It is neither averred nor proved that any blame attaches to the company, except for the naked fact that the bridge proved frail. But this of itself proves no incompetency in the builder, or fault in his selection.

Moreover, the plaintiff knew the character of the bridge— he was a workman in the common employment of building the road, and daily saw the work. He knew the bridge was just erected—that one train only had crossed it—it was at his option to cross it or not—he could have left the service if he pleased. But he assumes the risk of mounting a construction train, on a platform car loaded with iron, and thus mounted proceeds to cross the bridge. If it proved insecure, he must bear the consequences alone.

The instructions for the defendant were well supported by evidence, and should have secured a verdict. Plaintiff evidently was not a passenger, but a laborer; he paid no fare, and was liable to pay none. Rouse undoubtedly swore falsely —the plaintiff incurred injury through his own negligence, and this defeats his recovery even if he were a passenger. He did not prove such a case as he made in his declaration.

Clearly, the first instruction for the plaintiff is not the law. The many cases cited above show that it makes no difference though the servant injured is subordinate, or in a different department of labor from that of the servants through whose carelessness he is injured.

The fourth instruction was erroneous. The plaintiff by his pleading had made the direction of his journey material. And for the same reason it was error to refuse the third instruction for the defendant. The jury were, by the fourth instruction for plaintiff, and the refusal of the third for defendant, misled, and diverted from considering the manifest conflict between

the declaration and proof. The declaration of the plaintiff and the testimony of four witnesses agree, and render incredible the testimony of Rouse, whose testimony traverses the declaration, and yet is put forward as the main ground for a recovery.

The negligence of the plaintiff, his own want of care, the hazard he assumed, put him in such fault that he cannot recover, either as passenger or servant. If he was a passenger, he with his eyes open chose a construction train, and mounted, not the box car in the rear, but a platform car loaded with iron. He proceeded to travel over a new and unfinished road, and over a bridge traversed only once before. His position was one of extraordinary danger in case of accident, and he took it for himself.

The decisions of this court are numerous on the subject of injuries by reason of negligence. And the doctrine is, that to maintain an action for negligence there must be fault on the part of the defendant, and no want of ordinary care on the part of the plaintiff. *Galena and Chicago Railroad Co.* v. *Jacobs,* 20 Ill. 478.

As to whether the plaintiff, though a servant, was to be regarded as a passenger while riding on a car to his work, see *Gilshannon* v. *Stony Brook Railroad Co.,* 10 Cush. 228.

Upon motion the court should have set aside the verdict and granted a new trial. The judgment of the Circuit Court should be reversed.

GUSTAVUS KŒRNER, for Defendant in Error.

The plaintiff in error insists that Muhling cannot recover, because it is clearly proven, as he says, that Muhling was a laborer in the employ of the company, when the accident happened.

The point does not really arise on the record. The first count of the declaration sets out that Muhling *was a laborer for the company;* and the other material allegations of ownership of road, negligence in building a certain trestle work, and injury to Muhling in consequence of such neglect. To

this declaration the company pleaded the general issue, deny-ing the facts, but admitting the legal responsibility of the defendants if the facts were proven, and so waiving the question as to whether an employee can recover from the common principal on account of neglect in co-laborers.

No motion in arrest of judgment was made, nor is error assigned on the insufficiency of the declaration. If such motion had been made, or such error had been assigned, it would not have availed, there being other good counts in the declaration.

The first count, according to the admission of the counsel for the company, is fully proven as respects the fact of Muhling being a servant of the company. All other material allega-tions are fully proven. The legal question which he seeks to raise does not present itself at all.

Independent of the pleadings in the case, the instructions asked by Muhling's counsel in the court below were all proper, and were properly given. The first is really the only one complained of, and it is in strict accordance with the views expressed by this court. 15 Ill. 550; 21 Ill. 20. See also, Story on Agency, section 453, f.

In the latter case, several instructions containing the prin-ciple that servants may sue the master for acts of co-servants, if they are in different lines of employment, are expressly approved by this court.

The decisions in Scotland, Indiana, Ohio, Louisiana, are nowhere overruled by this court, and rest on common sense and common justice, though the present case is sustained without any reliance on the doctrine "respondeat superior."

The second point made by the plaintiff in error is, that under the second and third counts of the declaration, Muhling was not a "*passenger*," and under the same head it is intimated more than insisted, that even if he had proved himself a passenger, he could not recover because he was guilty of neg-lect himself. These are all questions of fact. I contend that the proof is clear and beyond dispute under those counts, that he was a passenger, and I must refer to the written argument,

where the evidence is pointed out. Rouse testifies to it positively, and he is not contradicted in any material point, but rather supported by several witnesses.

No negligence is proven on the part of Muhling, which could, in the slightest degree, have been instrumental in breaking down the trestle bridge over Shoal creek, and producing his injury.

WALKER, J. The evidence shows, that defendant in error, when he received the injury, was going from his residence to Trenton or Summerfield, to purchase flour. He was in the pursuit of his own business, and not that of the company. Whatever might have been his former relations with the company, he was then engaged in his own business. He was at that time in the situation of any other stranger to, or passenger upon the road, liable to no greater burthens, nor entitled to more privileges, than any other passenger similarly situated. He had no control over the running of the train, was not then engaged in the business of the company, and was, as far as this record discloses, free from all negligence, and was in no wise responsible for the injury, nor did his connection with the road in the remotest degree contribute to the misfortune.

The evidence clearly shows, that this trestle bridge was imperfectly and insecurely constructed. This is not controverted. It must then follow, that, as the injury was produced by the insufficient structure made by the company, and without any fault of plaintiff in error, the company should be responsible.

It is, however, urged that the plaintiff had paid nothing for his passage. This can make no difference, as the company had the right to demand the fare at the time he came upon the road, and upon failing to pay, might have put him from the cars. Or they might have afterwards collected it, or, if the company was indebted to him, as the evidence tends to show, they could have deducted it from that indebtedness. But even if they were carrying him gratuitously, it could make no difference. *Gillenwater* v. *Madison and Indian-*

*apolis Railroad Co.*, 5 Ind. R. 339; *P. & R. R. R. Co.* v. *Derby*, 14 Howard, 468. When a person is upon a train, under such circumstances, the only inquiry is, whether he was lawfully there, and not whether he had paid his money for the privilege. So that, in point of fact, it can make no difference in this case, whether plaintiff in error had paid for his passage, or whether he was there by permission, to be carried without compensation, as it does not appear that it was unlawful. The evidence shows, that the road had been carrying passengers for pay on their construction trains, and they must be held to the same degree of diligence, with that character of train, as with their regular passenger coaches, for the safety of the persons and lives of their passengers. *Chicago and Burlington Railroad Co.* v. *Hazzard*, 26 Ill. 373.

In view of the whole of the evidence in this case, the company must be held liable for the injury. The evidence warrants the verdict, and as no error is perceived in this record, the judgment must be affirmed.

*Judgment affirmed.*