## PAYNE *v.* TERRE HAUTE AND INDIANAPOLIS RAILWAY COMPANY.

[No. 19,768.   Filed January 10, 1902.]

APPEAL AND ERROR.—*Transfer of Cause from Appellate to Supreme Court.*—Where the Supreme Court sustains a petition to transfer a cause from the Appellate Court, the decision of the Appellate Court is thereby vacated. *p. 616.*

CARRIERS.—*Injury to Passenger Riding on Pass.—Release.*—An action cannot be sustained by a passenger for injuries caused by the negligence of the carrier where the passenger was at the time of receiving the injury riding on a free pass which contained a stipulation releasing the carrier from such liability. *pp. 616-620.*

From Clay Circuit Court; *S. M. McGregor,* Judge.

Action by John R. Payne against the Terre Haute and Indianapolis Railroad Company for damages on account of personal injuries sustained. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*E. S. Holliday, F. A. Horner* and *J. A. McNutt,* for appellant.

*J. G. Williams, G. A. Knight* and *D. P. Williams,* for appellee.

BAKER, J.—By sustaining appellee's petition for an order of transfer, this court has vacated the decision of the Appellate Court and has brought the cause here for final determination.

Appellant began this action to recover damages for personal injuries received by him through the negligence of appellee's servants while he was being carried as a passenger on one of appellee's regular passenger trains. Appellee answered that appellant paid no fare, but was traveling on a free pass, which was issued to him as a pure gratuity, and which contained a stipulation, agreed to by appellant, that "by its acceptance and use any and all claims for injures to person or for loss or damage to baggage that might accrue to [appellant] are released". The court overruled appellant's demurrer to this answer. On appellant's refusal to

plead further, judgment was rendered, from which this appeal is taken. The only question presented is the sufficiency of the answer.

Appellant is prosecuting this action in the face of his agreement not to do so. No allegations appearing to the contrary, presumably he was of sufficient capacity to make a binding contract. His contention, therefore, is that no one can lawfully make such a contract and be bound thereby. One who seeks to put a restraint upon the freedom of contracts must make it plainly and obviously clear that the contract in question is void. *Pittsburgh, etc., R. Co.* v. *Mahoney,* 148 Ind. 196, 40 L. R. A. 101, 62 Am. St. 503; *Baltimore, etc., R. Co.* v. *Voigt,* 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560.

The only claim that this contract is void is that it is against public policy.

It is thoroughly established in this State, and generally elsewhere, that railroad corporations, as common carriers, are not permitted, by contracts with their customers, to exempt themselves from the consequences of their own negligence. *Ohio, etc., R. Co.* v. *Selby,* 47 Ind. 471, 17 Am. Rep. 719; *Ohio, etc., R. Co.* v. *Nickless,* 71 Ind. 271; *Louisville, etc., R. Co.* v. *Faylor,* 126 Ind. 126; *Louisville, etc., R. Co.* v. *Keefer,* 146 Ind. 21, 38 L. R. A. 93, 58 Am. St. 348; *Pittsburgh, etc., R. Co.* v. *Mahoney,* 148 Ind. 196; *Russell* v. *Pittsburgh, etc., R. Co.,* 157 Ind. 305; *New York, etc., R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627; *Baltimore, etc., R. Co.* v. *Voigt,* 176 U. S. 498.

The main underlying reasons are briefly these: Railroads, by reason of physical conditions, are natural monopolies. In most instances, the public are restricted to a choice of using a certain line or none. The corporations, created by the State, are granted special privileges, in return for which they are held, among other things, to undertake to use due care and diligence in transporting passengers and goods. They owe this duty to the public generally. They owe the further duty, as common carriers, to trans-

port, on equal terms of service and compensation, all who apply. The person who is practically constrained to patronize a certain road and the corporation that operates the road are not on a footing of equality in contracting. If the corporation was permitted to impose, as one of the terms of the contract, a waiver of its negligence upon one customer, it could practically upon all, and thereby, while claiming the benefits of its franchise, evade the performance of a public duty which was one of the chief considerations of the grant. Therefore, it is held, a contract, by which a common carrier assumes to abandon a duty it owes to the public generally, is void as being against public policy.

In the Selby, Nickless, and Faylor cases, *supra,* the plaintiffs were traveling on passes which purported to release the companies from damages through their negligence, and the stipulations were held void. But the passes were "stock-drovers' passes", issued in connection with bills of lading for the shipment of live-stock which the plaintiffs were to accompany and care for. The usual rates were paid, and the court properly decided that the transaction was an entirety, that plaintiffs had paid for transportation of their persons as well as their stock, that the companies stood in the relation of common carriers for hire to plaintiffs as part of the general public, and that therefore the rule which forbade the companies to abandon a duty owing to the general public rendered the waiver void. But the statements in these cases to the effect that such a waiver in a free pass is unenforceable, were unnecessary to the proper decision of the issues presented, and are therefore not authoritative.

The precise question raised by this appeal has not heretofore been presented to this court, but the principles announced in the Keefer, Mahoney, and Russell cases, *supra,* are controlling. In these cases it is expressly declared to be a well-established rule that railroad companies, though public or common carriers, may contract as private carriers for the transportation of persons whom they are not bound as common carriers to receive. In the Keefer and Mahoney

cases, the court held that railroad companies were not required, under the duties they owe to the general public, to carry express matter for express companies, that with respect to such transportation they were authorized to contract as private carriers, and that a waiver of liability for negligent injury of express messengers was enforceable. In the Russell case the same doctrine was applied to an action by a porter upon a Pullman sleeping car. These cases prove that private carriers, even for hire, may lawfully attach conditions of exemption for negligence to their contracts for carriage, and that the test whether a particular contract is that of a public or private carrier is whether the customer as one of the general public had the right to compel the carrier to undertake the transportation. As stated in the Russell case: "The inquiry remains, is the present contract of exemption invalid as being within the theory of the rule above explained? If it is, it must be by virtue of some positive statute, or because of the fact that it is an abandonment by the carrier of a public duty." There is no statute that affects the question. If express messengers and Pullman porters, who are on the trains in pursuance of their regular vocations and whose transportation is paid for, can not require railroad companies to carry them as a public duty, much less can holders of gratuitous passes. They are creatures of favoritism. They voluntarily separate themselves from the general public. They do not approach the companies as part of the general public, to be carried on the usual terms of service and compensation; and they are certainly under no compulsion to enter into the contract of exemption. The reasons on which is based the rule that public carriers will not be permitted to evade a public duty wholly fail, for railroad companies are under no obligation to transport the general public gratuitously.

The following cases are directly in point: *Griswold* v. *New York, etc., R. Co.,* 53 Conn. 371, 55 Am. Rep. 115, 26 Am. & Eng. R. Cas. 280; *Rogers* v. *Kennebec, etc., Co.,* 86 Me. 261, 29 Atl. 1069, 25 L. R. A. 491; *Quimby*

v. *Boston, etc., R. Co.,* 150 Mass. 365, 23 N. E. 205, 5 L. R. A. 846, 40 Am. & Eng. R. Cas. 693; *Kinney* v. *Central R. Co.,* 34 N. J. L. 513, 3 Am. Rep. 265; *Wells* v. *New, York, etc., R. Co.,* 24 N. Y. 181; *Muldoon* v. *Seattle City R. Co.,* 7 Wash. 528, 35 Pac. 422, 22 L. R. A. 794, 38 Am. St. 901, 58 Am. & Eng. R. Cas. 546; *Muldoon* v. *Seattle, etc., R. Co.,* 10 Wash. 311, 45 Am. St. 787. These represent the decided weight of authority. The cases to the contrary may be found in the notes in the various annotated reports above referred to.

By analogy, the proposition that whoever for his own advantage or profit accepts free transportation must abide the conditions on which it is issued, is supported by the holding that one who purely for his own convenience uses a railroad track or yard for a passageway must take the license on the terms of risk with which it is granted. *Cannon* v. *Cleveland, etc., R. Co., post,* 682.

Not only is no principle of public policy subverted by denying the holder of a free pass the right to repudiate his contract, but there is sound public policy in holding him to it. The expenses of operating railroads are borne by the general public,—that is, by the patrons who pay. In so far as persons stand aloof from the general public they increase the burden or at least postpone the day of lower rates. If the pass-takers, in addition, were allowed to recover judgments for personal injuries by disavowing their agreements, they would be making a positive increase of disbursements, to be borne ultimately by the general public.

And if it were held to be against public policy for railroad companies to issue free passes, of course the recipients who used them to secure carriage would have no standing to sue as passengers.

Judgment affirmed.

Jordan, C. J.—While I concur, with some doubts, in the judgment of affirmance, still I do not concur in all of the reasons and arguments contained in the opinion of the court.