[L. A. No. 2646.    Department One.—May 18, 1911.]

## CARRIE E. WALTHER, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

COMMON CARRIERS OF PASSENGERS—CONTRACT EXEMPTING FROM LIABILITY FOR NEGLIGENCE—COMPENSATION FOR CARRIAGE—PUBLIC POLICY.—Independent of statutory provisions, it is almost universally held that any contract purporting to exempt a common carrier of persons from liability for negligence of himself or his servants to a passenger carried for compensation is void, as being against public policy, and it is immaterial in such cases that the attempted limitation on such liability is agreed to by the passenger in con-

sideration of special concessions in the matter of rate of fare or other departure from the rules applicable to passengers paying full fare. It is enough that there is any consideration for the carriage.

ID.—PASSENGER CARRIED GRATUITOUSLY—GROSS NEGLIGENCE.—By the great weight of authority, however, in the absence of provision to the contrary, such a contract of exemption from liability for negligence is upheld, at least so far as any except what is called in the opinions wanton or willful or gross negligence is concerned, in the case of a passenger who is carried solely as a matter of favor, and without any compensation or advantage whatever to the carrier.

ID.—WHO IS A PASSENGER.—The person admitted to his vehicle by a common carrier for the purpose of carriage for any compensation is a passenger, with the rights possessed by any passenger so far as the exercise of care for his safe carriage is concerned.

ID.—CARRIER LIABLE FOR INJURY TO GRATUITOUS PASSENGER CAUSED BY GROSS NEGLIGENCE.—Under section 2175 of the Civil Code, providing that "a common carrier cannot be exonerated by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants," such carrier is liable for an injury to a passenger carried gratuitously occasioned by the gross negligence of itself or of its servants.

ID.—WHEN RELATION OF COMMON CARRIER AND PASSENGER EXISTS.—On whatever terms a common carrier of persons, as the same is defined in section 2168 of the Civil Code, vountarily receives and carries a person, the relation of common carrier and passenger exists. The voluntary waiver of all claim for compensation for carriage of a person does not take away from the *status* of the carrier as a common carrier so far as the person carried is concerned. It is still a common carrier as to such person, with all the obligations of a common carrier, except in so far as those obligations are limited by contract provisions which are not inhibited by law.

ID.—GROSS NEGLIGENCE DEFINED—WANT OF SLIGHT CARE AND DILIGENCE.—The term "gross negligence," as used in section 2175 of the Civil Code, which has remained in its present form from the adoption of the code in 1872, must be construed in accordance with the definition given to that term by sections 16 and 17 of that code, notwithstanding the repeal of the latter sections in 1874. So construed, the term means the "want of slight care and diligence," and does not imply anything in the nature of a willful wrong.

ID.—RAILROAD—LEAVING SWITCH OPEN—QUESTION OF GROSS NEGLIGENCE FOR TRIAL COURT.—The question whether the action of a switch foreman in leaving open a switch connecting the main track of a railroad with a siding, contrary to the rules of the company, amounted to gross negligence on the part of such foreman, was one for the trial court, and its finding thereon will not be disturbed by the appellate court.

APPEAL from a judgment of the Superior Court of San Bernardino County. Benjamin F. Bledsoe, Judge.

. The facts are stated in the opinion of the court.

J. W. McKinley, and W. R. Millar, for Appellant.

L. M. Sprecher, and Frank T. Bates, for Respondent.

Warren Olney, Jr., and Alexander R. Baldwin, *Amici Curiæ,* on petition for hearing in Bank.

ANGELLOTTI, J.—The plaintiff is the widow of one Henry F. Walther, who, while being carried on a passenger train of defendant on March 28, 1907, was killed by reason of the derailment of such train and the consequent wrecking and demolition of the car in which he was being carried. The accident occurred in defendant's yard at Colton in San Bernardino County, and was caused by the train on which deceased was riding running from the main track into an open switch at a high rate of speed, estimated by the trial court to be between forty-five and fifty-five miles an hour, when, being unable to traverse the curve of the sidetrack, it was derailed. The switch had been left open by the switch foreman, who, with his crew, was working on the siding at the time, and who had neglected to keep himself advised of the whereabouts of the train, which was long overdue, and had left the switch open in violation of the rules of the defendant. Deceased was an employee of defendant, but at the time of the accident and for some months next preceding the same was absent on leave. At the time of the accident he was returning from a journey to an eastern state to his home in California. He was riding on a pass, good until March 31, 1907, which had been issued to him by defendant for the purposes of his journey. It was found by the trial court, in accord with a stipulation of the parties, that the pass was issued to him as an employee, "in accordance with the long-established practice of the company, and one well known to its employees, to furnish passes from time to time to its employees." There was no other consideration for such pass. It contained the following statements, subscribed by the deceased: "This is a free pass based upon no consideration whatever. The person accepting

and using this pass, in consideration of receiving the same, agrees that the Southern Pacific Company shall not be liable under any circumstances, whether of negligence—criminal or otherwise—of its agents or others, for any injury to the person, or for any loss or damage to the property of the individual using this pass; and that as to such person the company shall not be considered as a common carrier, or liable as such." This action was brought by plaintiff to recover the damage caused her by the death of her husband, being based upon section 377 of the Code of Civil Procedure, which provides that when the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such person. In her complaint, she alleged that the accident and the consequent death of deceased were caused by the "gross negligence" of defendant, and these allegations were found by the trial court, which tried the case without a jury, to be true. Damages were assessed at the sum of eight thousand dollars, and judgment was given in favor of plaintiff for that amount. This is an appeal by defendant from such judgment. The record on appeal was filed in this court on March 29, 1910.

The ultimate question presented by this appeal is whether the provision in the pass purporting to exempt defendant from liability for the negligence of its agents precludes a recovery under the circumstances of this case.

Independent of statutory provisions, it is almost universally held that any contract purporting to exempt a common carrier of persons from liability for negligence of himself or his servants to a passenger carried for compensation is void, as being against public policy, and it is immaterial in such cases that the attempted limitation on such liability is agreed to by the passenger in consideration of special concessions in the matter of rate of fare or other departure from the rules applicable to passengers paying full fare. It is enough that there is any consideration for the carriage. The person admitted to his vehicle by a common carrier for the purpose of carriage for any compensation is a passenger, with all the rights possessed by any passenger so far as the exercise

of care for his safe carriage is concerned. By the great weight of authority, however, in the absence of provision to the contrary, such a contract of exemption from liability for negligence is upheld, at least so far as any except what is called in the opinions wanton, or willful, or gross negligence is concerned, in the case of a passenger who is carried solely as a matter of favor, and without any compensation or advantage whatever to the carrier. (See *Northern Pacific R. R. Co.* v. *Adams,* 192 U. S. 440, [24 Sup. Ct. 408, 48 L. Ed. 513]; *Rogers* v. *Kennebec Steamboat Co.,* 86 Me. 261, [29 Atl. 1069, 25 L. R. A. 491]; *Quimby* v. *Boston etc. R. Co.,* 150 Mass. 365, [23 N. E. 205, 5 L. R. A. 846]; *Kinney* v. *New Jersey etc. R. R. Co.,* 32 N. J. L. 407, [90 Am. Dec. 675]; *Muldoon* v. *Seattle City R. Co.,* 7 Wash. 528, [38 Am. St. Rep. 901, 22 L. R. A. 794, 35 Pac. 422]; *Payne* v. *Terra Haute etc. Ry. Co.,* 157 Ind. 616, [62 N. E. 472, 56 L. R. A. 472].) We think that the question of public policy in regard to such contracts of exemption, even as to passengers carried gratuitously, has been settled in this state by legislative enactment. Section 2175 of the Civil Code provides: "A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants." Aside from the question of the meaning of the term "gross negligence" as used in this section, it is earnestly contended that the section has no application in the case of one carried without consideration of any kind, and that as to such a passenger the carrier is not a common carrier at all. We are of the opinion that the question of consideration cuts no figure in determining the applicability of the section. Section 2168 of the Civil Code, contained in the same chapter, which is entitled "Common Carriers in General," declares that "every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry," and, of course, the defendant was, under this definition, a common carrier of persons. As such, under other provisions of the same chapter and other chapters, it was entitled to refuse to carry any person except upon compliance with certain requirements, including the payment of a prescribed reasonable compensation, but, at the time of this accident at least, it could legally waive any of

these requirements on the part of the passenger, and could receive and carry him for a reduced or different consideration, or altogether without consideration. But on whatever terms a common carrier of persons voluntarily receives and carries a person, the relation of common carrier and passenger exists. This is recognized by some of the authorities upholding the exemption from liability for negligence provision in the case of a passenger carried gratuitously. (See *Rogers* v. *Kennebec Steamboat Co.,* 86 Me. 261, [29 Atl. 1069, 25 L. R. A. 491].) The sole inquiry in this regard is, as has been said, whether the person was lawfully on the vehicle (see *Ohio & Miss. R. Co.* v. *Muhling,* 30 Ill. 9, [81 Am. Dec. 336]), has been voluntarily received by the common carrier on any terms for the purpose of carriage, and is not, as was the case in *Sessions* v. *Southern Pacific Co., ante,* p. 599, [114 Pac. 982], a mere trespasser on the vehicle. The voluntary waiver of all claim for compensation for carriage of a person does not take away from the *status* of the carrier as a common carrier so far as the person carried is concerned, any more than would a special reduction in the amount of compensation charged or a special concession as to some other authorized requirement accomplish such effect. The carrier is still a common carrier as to such person, with all the obligations of a common carrier, except in so far as those obligations are limited by contract provisions which are not inhibited by law. Other sections of our Civil Code permit such limitations as to certain matters not here involved, but section 2175 expressly prohibits limitations of liability for gross negligence on the part of the common carrier or his servants, whatever, as we read the various sections bearing upon this matter, may be the terms upon which it receives and undertakes to carry a passenger.

This brings us to a consideration of the question of the meaning of the term "gross negligence," as used in section 2175 of the Civil Code, for under the views already stated, the exemption provision in the pass of deceased was not effectual to free defendant from liability for damages resulting from "gross negligence" of the defendant or its servants, within the meaning of the term "gross negligence" as used in said section. The contention of learned counsel for defendant is that these words, in the connection in which they are used, imply something in the nature of willful wrong, and do not

include anything in the nature of a mere omission to exercise care without knowledge that such omission will probably result in injury to others.   Section 2175 was, as it now stands, a part of the original Civil Code adopted in the year 1872.   This code contained two sections declaring that there are three degrees of care and diligence—slight, ordinary, and great,— and three degrees of negligence—slight, ordinary, and gross. Slight care was defined as that "which is such as persons of ordinary prudence usually exercise about their own affairs of slight importance," and gross negligence was defined as that "which consists in the want of slight care and diligence." (Secs. 16 and 17.)   These sections were repealed outright in 1874, but such repeal cannot affect the question of the construction of the words "gross negligence" in section 2175 of the Civil Code, as it is the intention of the legislature at the time of the adoption of the latter section that must control. We see no warrant for holding that the term "gross negligence" as used therein was intended to mean other than the "gross negligence" defined in section 17 of the same act "to establish a Civil Code," which was simply "the want of slight care and diligence."   This must necessarily have been the view of this court in *Donlon Bros.* v. *Southern Pacific Co.,* 151 Cal. 763, 766, [11 L. R. A. (N. S.) 811, 91 Pac. 603], for an examination of the record shows that there could have been no other ground for the expression of opinion "that there was sufficient evidence in the case warranting the jury in finding that the defendant was guilty of gross negligence occasioning the loss and injury complained of."   It was also recognized in *Merrill* v. *Pacific Transfer Co.,* 131 Cal. 582, 589, [63 Pac. 915], upon evidence that was utterly destitute of anything in the nature of a showing of willful or wanton wrong, that the question whether or not the common carrier was guilty of gross negligence was one for the jury to pass upon under proper instructions.   But regardless of these expressions of opinion, both of which were made under such circumstances that they may reasonably be claimed not to constitute binding authority on the question, we are satisfied that the definition of the "gross negligence" of section 2175 of the Civil Code, must be found in sections 16 and 17 of the Civil Code, as the same were adopted in 1872.

Accepting this definition of gross negligence, it cannot

reasonably be contended that the evidence was not legally
sufficient to support the finding of the trial court that the
deceased was killed by the gross negligence of defendant's
servants.    The question of the existence of such gross negli-
gence was one for the trial court, and the facts being legally
sufficient to warrant the inference drawn, an appellate court
cannot properly disturb the conclusion reached by that
tribunal.

The conclusion we have arrived at upon the points already
discussed renders it unnecessary to consider other questions
argued in the briefs, and compels an affirmance of the
judgment.

The judgment is affirmed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing
in Bank, and filed the following opinion on June 21, 1911:—

BEATTY, C. J.—I think this case deserves further consid-
eration, not because I am convinced that the judgment of the
superior court is erroneous, but because the decision here is
based upon a ground which will include cases affected by
considerations different from those which may properly be
deemed controlling in this case.    It is held in the opinion of
the court that no matter how entirely gratuitous the trans-
portation of a passenger may be, he can never bind himself,
in consideration of such transportation, to waive any claim
for damages based upon the gross negligence of a common
carrier or his servants.    It is, in my opinion, unnecessary to
lay down so broad a rule in order to sustain this judgment.
The fact that the pass in question here was issued to an
employee of the defendant, in accordance with its long-
established and well-understood practice, would warrant the
conclusion that his transportation was not purely gratuitous;
for it is reasonable to suppose that the privilege of free trans-
portation to employees would in many, if not in all, instances
affect the terms upon which men would be willing to enter, or
to continue in, the service of a railway corporation, and would,

in the long run, result in a considerable pecuniary advantage to the company—an advantage imposing a corresponding obligation to issue the pass when requested.

In this view, the issuance of a free pass to a railway employee rests upon a valuable consideration. But there are many other classes of persons, as, for example, sick, destitute, or homeless, but deserving persons, to whom railway companies and other common cariers are permitted to issue free passes, and for whom they do provide transportation for no consideration except the promptings of common humanity. Certainly there is no justice or sound policy in a law which sets a premium on inhumanity by warning a person, otherwise disposed to extend relief to one in dire need of it, that he can only obey the promptings of compassion at the risk of serious pecuniary loss. But that is what our law of common carriers does if it has been correctly construed in the broad declaration that "on whatever terms a common carrier of persons voluntarily receives, and carries a person the relation of common carrier and passenger exists." This proposition is only partly true, and the particular in which it falls short of the truth is precisely that element in the ordinary relation of carrier and passenger which takes the case of purely gratuitous transportation out of the operation of section 2175 of the Civil Code. The definition of common carrier found in section 2168 of the Civil Code comes no nearer defining the relation of carrier and passenger than the definition of lawyer would to defining the relation of attorney and client. What the true relation is in either case is to be gathered from those provisions of the statute which prescribe the mutual rights and duties of the parties. It is the duty of a common carrier to provide transportation for passengers, and the right of the passenger to be transported, *but only on condition that the passenger pays the regular fare.* (Civ. Code, secs. 2169-2173.) If the person desiring transportation cannot pay, and stands in no relation to the carrier which gives him a right to demand free transportation, the carrier owes him no duty, and in granting him free transportation as a mere bounty he steps out of his character as a common carrier and deals with him in a relation essentially different from the legal relation of common carrier and passenger. If, in such case, the carrier requires a waiver of claims for damage, it is absurd to suppose

that he is craftily bargaining for exemption from any claims based upon his willful torts or meditated fraud. No agreement would shield him from such claims, and since he could make no profit out of the free transportation of a passenger a motive for such an elaborate contrivance is hard to imagine. But that he should desire to be exempt from claims based upon the mere forgetfulness, ignorance, or unskillfulness of himself or his servants, is natural.and entirely justifiable. To say that a common carrier, merely because he is a common carrier, cannot in such circumstances stipulate as freely for exemption from claims for damages as any other person, is to ignore the fact that for the sole benefit of the passenger he has waived the rights and in so doing divested himself *pro hac vice* of the character of a common carrier.

The decision of the court, in my opinion, goes too far in putting upon the same plane with employees of a railway company traveling upon passes issued in accordance with its general custom, those who are carried out of simple compassion.