[Civ. No. 20039. First Dist., Div. Two. Mar. 5, 1963.]

INEZ L. PRATT, Plaintiff and Respondent, v. THE WEST-
ERN PACIFIC RAILROAD COMPANY, Defendant
and Appellant.

574

John W. Martin, G. Blandin Colburn, Jr., and Dunne, Dunne & Phelps for Defendant and Appellant.

Perkins, Carr & Anderson, Thomas C. Perkins and Frances Newall Carr for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment of $5,280, entered upon an adverse jury verdict in a personal injury action brought by a passenger riding on a free pass in a single, self-propelled diesel passenger unit known as a "Budd car." Defendant also appeals from an order denying its motion for judgment notwithstanding the verdict. The unit is hereafter referred to as "the train."

The pass had on its back a printed notice under which plaintiff had affixed her signature. This provided that the holder (plaintiff), by accepting the pass, "agrees to assume all risk of accident and damage to person or baggage in any circumstances and absolves The Western Pacific Railroad Company from all liability therefor."

The trial court held that appellant could, by such an agreement, exempt itself from liability for its negligence but could not do so for its *gross* negligence.

*Walther* v. *Southern Pac. Co.,* 159 Cal. 769, 772-774 [116

P. 51, 37 L.R.A. N.S. 235], is direct authority for this holding as applied to intrastate trips. The rule as to interstate trips is different, being controlled by federal law. (*Donnelly* v. *Southern Pac. Co.,* 18 Cal.2d 863, 867-868 [118 P.2d 465]; *Francis* v. *Southern Pac. Co.,* 333 U.S. 445, 450 [68 S.Ct. 611, 92 L.Ed. 798].) The trip being made by respondent was intrastate.

In *Walther, supra,* the employee involved therein was riding on a free pass which was issued to him "in accordance with the long-established practice of the company . . . to furnish passes from time to time to its employees." The Supreme Court held that a contract of exemption from liability for negligence is valid in such a situation but that section 2175 of the Civil Code "expressly prohibits limitations of liability for gross negligence on the part of the common carrier or his servants, whatever, as we read the various sections bearing upon this matter, may be the terms upon which it receives and undertakes to carry a passenger." (P. 774.)

Section 2175 of the Civil Code provides as follows: "A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants."

The action proceeded to trial on the first and third counts of the amended complaint. The second count was dismissed before trial.

The first count alleged that "defendant so negligently operated its said Budd car and so negligently maintained its tracks, right-of-way and premises that on January 9, 1959, between miles post 253 and miles post 254 said Budd car struck a boulder and was derailed." The trial court rejected this theory and refused to instruct on either ordinary negligence or the degree of care required of a common carrier, as provided in section 2100 of the Civil Code.

The third count alleged that "defendant did operate its said Budd car and maintain its Budd car, its tracks, its right-of-way and premises in such a grossly negligent manner that on January 9, 1959, between mile post 253 and mile post 254, said Budd car struck a boulder and was derailed." This is the only count which the court submitted to the jury.

However, the first count remained "alive" until the close of the evidence. Respondent was contending that she was a passenger for a consideration because the pass was a "fringe benefit," to which she was entitled as an incident to her de-

ceased husband's employment by the defendant. Her argument is that the exemption agreement was therefore void in its entirety, as being against public policy. (See *Walther* v. *Southern Pac. Co.*, 159 Cal. 769, 772 [116 P. 51, 37 L.R.A. N.S. 235].)

It was therefore agreed between respective counsel and the court, at the outset of the trial, that there should be no discussion during the trial itself as to the terms, "negligence" and "gross negligence," because it might confuse the jury and that the court should resolve the issue at the close of the evidence and instruct accordingly.

Appellant now complains that this resulted in the jury believing, all during the trial, that they were trying just an "ordinary negligence" case. However, as we have stated, appellant consented to this procedure. Moreover, we fail to see how appellant was prejudiced thereby.

The only points raised on appeal are (1) sufficiency of the evidence to support the implied finding of the jury as to gross negligence and (2) error in the giving and refusing of certain instructions on gross negligence. The facts, viewed in the light most favorable to the respondent, follow.[1]

The accident occurred on January 9, 1959, about 11:30 p.m., on the mainline track of defendant extending between Oroville, California, and Portola, California. The train was eastbound and had reached a point approximately 49 miles east of Oroville when it struck a large boulder which had rolled down onto the track from the mountain on the south. The boulder was 4 feet wide and 6 feet high and weighed 1½ tons.

It had been raining earlier in the evening but was not raining at the time of the accident. The windshield wipers had cleared the glass windshield through which the engineer looked down the track and the visibility ahead was good. He testified that he did not see the boulder until he was 80 to 100 feet from it. The front end of the train struck the boulder with a violent impact and did not come to a stop for another 85 feet. The front end of the train ran up over the top of this boulder and was derailed. It also struck a 3-ton rock which was approximately 5 feet wide and 6 feet high.

The force of the impact threw one passenger to the floor

---

[1]Throughout its lengthy briefs, appellant discusses the evidence in the light most favorable to it. We regret the necessity of once again calling attention to the familiar rule, as stated in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].

and plaintiff was thrown forward, half in and half out of the seat where she had been lying down asleep. The extent of the injuries which she thereby sustained is not an issue herein.

The engineer was very familiar with the area and knew that most slides occurred in wet weather. "Slow orders" had been issued, reducing the maximum speed of trains through that area to 20 miles per hour. Most of the area was equipped with a "slide detector fence" which would have activated the block signals and warned the engineer in the event of a boulder coming onto the track. Defendant had not installed such a device at the scene of the accident. The engineer knew this.

As he testified, "Under conditions like that you never take your eyes away from what is in front of you." Whether he did or did not do so is the principal question of fact submitted to the jury.

The boulder was between the two rails of the track and 20 feet into a 6.42 degree curve. To the west of the beginning of this curve is 950 feet of practically straight track. The last 250 feet of this portion of the track is what is termed a "spiral" and the 700 feet preceding it is the "tangent," which is absolutely straight.

A "spiral" is a very slight curve. The defendant's roadmaster testified that its start cannot be seen with the naked eye, that its location cannot even be determined without the aid of an instrument.

The engineer testified that the headlight at the front of the train would illuminate a straight track for approximately 2,000 feet ahead but that, because the boulder was 20 feet from the beginning of the curve, he could not see it at night until he was 80 to 100 feet from it. He stated that, in daylight, he could have seen the boulder from 400 to 600 feet away. He further testified that the headlight threw out a cone-shaped light which illuminated the track for a few feet on either side. The position of the boulder was clearly outlined by the rails, which were wet and glistened when light fell upon them.

The photographs in evidence graphically depict the scene, particularly the view which the engineer would have from his cab in the front of the train. The curve at its beginning is so gradual that it seems impossible to believe that the engineer could not have seen the boulder until he got within 100 feet of it. The jury would have a right to believe that the headlight would have illuminated the boulder for a distance of at least 500 or 600 feet and that the engineer should have seen

it at this distance. In addition, the train was equipped with, and had on at the time, a Mars light which had been fixed in a stationary position for the very purpose of affording additional illumination. It is ordinarily in a rotating position and is primarily for the purpose of warning of the approach of the train. The engineer explained that it was not needed for this latter purpose in the area in question.

The engineer had express warning of the danger of boulders on the track. That was the reason for the slow order. He knew there was no "slide detector fence" along that portion of the track where the accident occurred and that the only warning he would get of a slide at that point would be by keeping a vigilant lookout ahead.

The boulder which the train first hit was only 20 feet into the curve. This is but slightly more than the length of an ordinary automobile. The boulder was 6 feet high and 4 feet wide and was resting squarely between the rails. At that distance the track had deviated only a few feet to the left of the straight portion of the track. The headlight threw out a cone-shaped light. The engineer was at the top of the car, in his cab, and had an unobscured view of the track ahead.

The physical evidence, particularly the photographs in evidence, demonstrates very clearly that the boulder would have been within the rays of the train's headlight for a distance of at least 500 to 600 feet and that the engineer could easily have seen it from this distance.

The Feather River was below the track on the north or left hand side. The witness Reed, who was himself a railroad man, feared that the train was going to fall into the river as the result of the impact.

In short, we have here an extremely dangerous situation well known beforehand by the engineer. In our opinion, it was for the jury to determine, as a question of fact, whether the failure of the engineer to see the boulder in time to have stopped the train constituted gross negligence as that term is used in section 2175 of the Civil Code and defined in *Walther* v. *Southern Pac. Co., supra.*

*Instructions Given and Refused on "Gross Negligence."*

Appellant contends that it was error for the trial court to refuse to give three instructions[2] proposed by it which would

---

[2] "It is undisputed that at the time and place of the accident which is the subject of this suit, plaintiff Mrs. Pratt was a passenger on defendant's train under and by virtue of a pass issued to her by the defendant and was not a fare paying passenger. Under these circumstances,

have more emphatically impressed upon the jury that liability in this case rested, if at all, on gross negligence rather than on ordinary negligence. Also, that the court did not correctly define gross negligence. We do not agree.

■ The instructions must be read as a whole, rather than individually and out of context, and they must be given a reasonable construction from the standpoint of their probable effect upon the jury. (*Lund* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 287, 294 [153 P.2d 705]; *Wells* v. *Lloyd,* 21 Cal.2d 452, 458 [132 P.2d 471].)

The jury was instructed as follows:

"It is undisputed in this case that at the time and place of the accident which is the subject of this suit, plaintiff, Mrs. Pratt, was a passenger on defendant's train under and by virtue of a pass issued to her by the defendant. It is undisputed, also, that as a condition of the issuance and acceptance of said pass the plaintiff signed an agreement purporting to absolve the defendant from all liability for injuries to her person.

"You are instructed that under the law the defendant cannot be absolved by any such agreement for liability to the plaintiff proximately resulting from its gross negligence."

"Gross negligence is defined as the failure to exercise slight care."

"Slight care is defined as that which is such as persons of ordinary prudence usually exercise about their own affairs of slight importance."

"In other words, the term 'gross negligence' as used in these instructions means something more than what is sometimes referred to as ordinary negligence. It is the want of slight diligence, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others."

"You are instructed that intent is not an essential element of gross negligence. Neither intent to injure, nor intent to violate the law, nor intent to do the act or acts which caused

---

defendant's only duty to plaintiff was to refrain from injuring her by reason of its gross negligence."

"Under the circumstances of this case the only duty owed by the defendant railroad to the plaintiff Mrs. Pratt was the exercise of slight care. It is liable to plaintiff only if it exercised so slight a degree of care as to amount to a total disregard of consequences, without the exertion of effort to avoid it."

"The gist and gravamen of plaintiff's action is gross negligence, which I have defined elsewhere in these instructions. The plaintiff must prove gross negligence or there can be no recovery. . . ."

the injuries is necessary to constitute gross negligence.''

''Gross negligence is not an absolute term but a relative one. In deciding whether or not there was gross negligence in a given situation the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence. Therefore, the amount of caution required to constitute slight care in any given situation will vary according to the nature of the act in question, according to what is being done, according to the surrounding circumstances, and according to the danger that should be reasonably apprehended in the situation.''

''The law does not permit you to determine the issues of this case by mere guess or speculation. In an action of this kind the law requires a party who asserts the affirmative of an issue to carry the burden of proving it by a preponderance of the evidence. In this case the burden of proof is upon the plaintiff to prove to you by a preponderance of the evidence that she has suffered injuries which have been proximately caused by the defendant's gross negligence.''

We think that the jury was sufficiently informed that respondent could only recover upon the basis of gross negligence by the appellant.

 We also think that the term ''gross negligence,'' as used in section 2175 of the Civil Code, was correctly defined.

There is no doubt that gross negligence has been defined in various ways in cases which involve situations ranging from defective transmission of telegraph messages (*Redington* v. *Pacific Postal Telegraph Cable Co.,* 107 Cal. 317 [40 P. 432, 48 Am.St.Rep. 132]), to liability under the former automobile guest statute (*Kastel* v. *Stieber,* 215 Cal. 37 [8 P.2d 474]) and to criminal homicide (*People* v. *Costa,* 40 Cal.2d 160 [252 P.2d 1]). But it is apparent that all of these definitions are merely expressive of the same principle. They all embody the simple idea which was expressed in *Walther* v. *Southern Pac. Co.,* 159 Cal. 769 [116 P. 51, 37 L.R.A. N.S. 235], at page 775: ''the want of slight care and diligence.'' (See also, Prosser, Law of Torts, (2d ed. 1955) p. 148.)

 The various definitions which appellant prefers offer nothing new to this concept, are merely cumulative, and probably would be far more confusing to the jury had they all been given as requested. The court therefore was under no duty to charge the jury any further than what it did, and therefore failure to do so was not error. (*Chutuk* v. *Southern Counties Gas Co.* (1942) 21 Cal.2d 372 [132 P.2d 193]; *Kor-*

*akakis* v. *Freeman* (1960) 178 Cal.App.2d 331 [2 Cal.Rptr. 802].)

 Finally, appellant contends that the trial court erred in charging the jury that gross negligence did not embody an element of intent. Appellant points up cases which discuss "attitude," "intent to violate the law," "conscious indifference," and other terms which emphasize a mental or psychological factor.

But *Walther* v. *Southern Pac. Co., supra,* is a case exactly in point. The court in that case was interpreting Civil Code section 2175 for the purpose of arriving at a definition of gross negligence. That section was enacted in 1872 and has never been amended.

 The court determined that gross negligence, as used in Civil Code section 2175, was the same expression used in section 17 of the same code, which defined the three degrees of negligence (slight, ordinary, and gross). The court said, at page 775: "These sections [16 and 17] were repealed outright in 1874, but such repeal cannot affect the question of the construction of the words 'gross negligence' in section 2175 of the Civil Code, as it is the intention of the legislature at the time of the adoption of the latter section that must control. We see no warrant for holding that the term 'gross negligence' as used therein was intended to mean other than the 'gross negligence' defined in section 17 of the same act . . . which was simply 'the want of slight care and diligence.' "

 The *Walther* case makes no mention of state of mind, or any type of intent as being essential to the definition of gross negligence. As far as the court there was concerned, gross neglience was plainly and simply a "want of slight care and diligence." This has been upheld as a valid, subsisting definition of gross negligence, and therefore it is felt that the trial court was free to rest its entire instruction upon this basis. The fact that it went further and instructed that intent was not an "essential element of gross negligence" could therefore not possibly prejudice the defendant. (See *Donnelly* v. *Southern Pac. Co.,* 18 Cal.2d 863, 869 [118 P.2d 465].)

The judgment and order appealed from are affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.