*J. M. Morton*, for the defendant.
*M. Reed*, for the plaintiff.

---

ASAHEL QUIMBY *vs.* BOSTON AND MAINE RAILROAD
COMPANY.

Essex.   November 6, 1889. — January 1, 1890.

Present : FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Personal Injuries — Carrier by Railroad — Passenger on Free Pass — Negligence of Servants — Special Agreement — Public Policy.*

A person accepting and travelling upon a free railroad pass with certain conditions upon it must be deemed to have accepted it on such conditions, whether he reads and signs them or not.

If a person solicits and accepts purely as a gratuity a free pass from a rail-

road company to ride upon its trains, and agrees to assume all risk of injury therefrom, the agreement is not invalid as against public policy, and he cannot recover for injuries caused by the negligence of the company's servants.

TORT for personal injuries occasioned to the plaintiff in an accident upon the defendant's railroad, through the alleged negligence of its servants. Trial in the Superior Court, before *Mason*, J., who reported the case for the determination of this court, in substance as follows.

It was admitted that at the time when the injuries were received the plaintiff was travelling upon a free pass given to him at his solicitation by the general manager of the defendant corporation. The face of the pass bore the following:

" 1062. Trip Pass. Boston and Maine Railroad. Pass Asa Quimby and wife, Account of Boston and Maine R. R., from Salem to Concord, N. H., provided he signs the agreement on the back hereof. Good until May 20, 1886, and not good for passage in the opposite direction. Boston, April 20, 1886. Jas. T. Furber, Gen'l Manager."

The face of the pass also bore upon its left-hand margin the words, " Read the other side."

Upon the back of the pass was the following:

" 1886. Agreement. In consideration of being given this free ticket by the Boston and Maine Railroad, I, the undersigned, hereby agree to assume all risk of accident, of every name and nature, which may happen to me while travelling on, or getting on or getting off, the trains of said railroad on which this ticket is honored for passage, by which I may be injured in my person, or for the loss of or damage to any of my property, being transported free of charge, in the same train with myself. [Here followed a blank space for the " Signature of holder of this free ticket."] If this free ticket is presented by any other than the person whose signature appears above, conductors will take it up and collect fare."

The pass had not been signed by the plaintiff, but he was travelling upon it when his injuries were received. He had tendered it to the conductor of the train, who had honored it as good for his passage, and had twice punched it. No oral testimony was introduced as to whether the plaintiff had read or had not read the language printed upon the pass.

The defendant admitted the negligence of its servants, but contended that it was not liable to the plaintiff by reason of the fact that he was riding upon the free pass when injured ; and asked the judge to instruct the jury, that, upon the above facts, the plaintiff could not maintain his action ; and the judge, being of the opinion that the action could not be maintained, submitted the case on the question of damages only to the jury, who returned a verdict assessing the plaintiff's damages.

If upon the above facts the plaintiff was entitled to recover, judgment was to be entered upon the verdict; otherwise, judgment was to be entered for the defendant.

*W. I. Badger*, (*S. Lincoln* with him,) for the defendant.

*H. P. Moulton*, for the plaintiff.

DEVENS, J. · When the plaintiff received his injury, he was travelling upon a free pass, given him at his own solicitation and as a pure gratuity, upon which was expressed his agreement that in consideration thereof he assumed all risk of accident which might happen to him while travelling on or getting on or off the trains of the defendant railroad corporation on which the ticket might be honored for passage. The ticket bore on its face the words, " Provided he signs the agreement on the back hereof." In fact, the agreement was not signed by the plaintiff, he not having been required to do so by the conductor, who honored it as good for the passage, and who twice punched it. The fact that the plaintiff had not signed it, and was not required to sign it, we do not regard as important. Having accepted the pass, he must have done so on the conditions fully expressed therein, whether he actually read them or not. *Squire* v. *New York Central Railroad*, 98 Mass. 239. *Hill* v. *Boston, Hoosac Tunnel, & Western Railroad*, 144 Mass. 284. *Boston & Maine Railroad* v. *Chipman*, 146 Mass. 107.

The object of the provision as to signing is to furnish complete evidence that the person to whom the pass is issued assents thereto ; but one who actually avails himself of such a ticket, and of the privileges it confers, to secure a passage, cannot be allowed to deny that he made the agreement expressed therein because he did not and was not required to sign it. *Gulf, Colorado, & Santa Fé Railway* v. *McGown*, 65 Texas, 640, 643. *Illinois Central Railroad* v. *Read*, 37 Ill. 484. *Wells* v. *New*

*York Central Railroad,* 24 N. Y. 181. *Perkins* v. *New York Central Railroad,* 24 N. Y. 196. If this is held to be so, the case presents the single question whether such a contract is invalid, which has not heretofore been settled in this State, and upon which there has been great contrariety of opinion in different courts. If the common carrier accepts a person as a passenger, no such contract having been made, such passenger may maintain an action for negligence in transporting him, even if he be carried gratuitously. Having admitted·him to the rights of a passenger, the carrier is not permitted to deny that he owes to him the duty which, as carrying on a public employment, he owes to those who have paid him for the service. *Todd* v. *Old Colony & Fall River Railroad,* 3 Allen, 18. *Commonwealth* v. *Vermont & Massachusetts Railroad,* 108 Mass. 7. *Littlejohn* v. *Fitchburg Railroad,* 148 Mass. 478. *Files* v. *Boston & Albany Railroad,* 149 Mass. 204. *Philadelphia & Reading Railroad* v. *Derby,* 14 How. 468. *Steamboat New World* v. *King,* 16 How. 469. But the question whether the carrier may, as the condition upon which he grants to the passenger a gratuitous passage, lawfully make an agreement with him by which the passenger must bear the risks of transportation, obviously differs from this.

In a large number of cases, the English courts, as well as those of New York, have held that where a drover was permitted to accompany animals upon what was called a free pass, issued upon the condition that the user should bear all risks of transportation, he could not maintain an action for an injury received by the negligence of the carrier's servants. A similar rule would, without doubt, be applied where a servant, from the peculiar character of goods, such as delicate machinery, is permitted to accompany them, and in other cases of that nature. That passes of this character are free passes properly so called, has been denied in other cases, as the carriage of the drover is a part of the contract for the carriage of the animals. The cases on this point were carefully examined and criticised by Mr. Justice Bradley, in *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 367 ; and it is there held that such a pass is not gratuitous, as it is given as one of the terms upon which the cattle are carried. The decision is put upon the ground that the drover

was a passenger carried for hire, and that with such passenger a contract of this nature could not be made. The court, at the conclusion of the opinion, expressly waives the discussion of the question here presented, and, as it states, purposely refrains from expressing any opinion as to what would have been the result had it considered the plaintiff a free passenger, instead of one for hire. *Railway Co.* v. *Stevens*, 95 U. S. 655, in which the same distinguished judge delivered the opinion of the court, is put upon the ground that the transportation of the defendant, although not paid for by him in money, was not a matter of charity or gratuity in any sense, but was by virtue of an agreement in which the mutual interest of the parties was consulted.

Whether the English and New York authorities rightly or wrongly hold that one travelling upon a drover's pass, as it is sometimes called, is a free passenger, they show that, in the opinion of those courts, a contract can properly be made with a free passenger that he shall bear the risks of transportation. This is denied by many courts whose opinions are entitled to weight. It will be observed that in the case at bar there is no question of any wilful or malicious injury, and that the plaintiff was injured by the carelessness of the defendant's servants. The cases in which the passenger was strictly a free passenger, accepting his ticket as a pure gratuity, and upon the agreement that he would himself bear the risk of transportation, are comparatively few. They have all been carefully considered in two recent cases, to which we would call attention. These are *Griswold* v. *New York & New England Railroad*, 53 Conn. 371, decided in 1885, and that of *Gulf, Colorado, & Santa Fé Railway* v. *McGown*, 65 Texas, 640, decided in 1886, in which the precise question before us was raised and decided, after a careful examination of the authorities, and opposite conclusions reached, by the highest courts of Connecticut and of Texas. No doubt existed in either case, in the opinion of the court, that the ticket of the passenger was strictly a gratuity, and it was held by the former court that, under these circumstances, the carrier and the passenger might lawfully agree that the passenger should bear the risks of transportation, and that such agreement would be enforced, while the reverse was held by the court of Texas.

We are brought to the decision of the question unembarrassed by any weight of authority without the Commonwealth that can be considered as preponderating.

It is urged on behalf of the plaintiff, that, while the relation of passenger and carrier is created by contract, it does not follow that the duty and responsibility of the carrier is dependent upon the contract; that, while with reference to matters indifferent to the public, parties may contract according to their own pleasure, they cannot do so where the public has an interest; that, as certain duties are attached by law to certain employments, these cannot be waived or dispensed with by individual contracts; that the duty of the carrier requires that he should convey his passengers in safety; and that he is properly held responsible in damages if he fails to do so by negligence, whether the negligence is his own or that of his servants, in order that this safety may be secured to all who travel. It is also said, that the carrier and the passenger do not stand upon an equality; that the latter cannot stand out and higgle or seek redress in the courts; that he must take the alternative the carrier presents, or practically abandon his business in the transfer of merchandise, and must yield to the terms imposed on him as a passenger; that he ought not to be induced to run the risks of transportation by being allowed to travel at a less fare, or for any similar reason, and thus to tempt the carrier or his servants to carelessness which may affect others as well as himself; and that, in few words, public policy forbids that contracts should be entered into with a public carrier by which he shall be exonerated from his full responsibility. Most of this reasoning can have no application to a strictly free passenger, who receives a passage out of charity, or as a gratuity.

Certainly the carrier is not likely to urge upon others the acceptance of free passes, as the success of his business must depend on his receipts. There can be no difficulty in the adjustment of terms where passes are solicited as gratuities. When such passes are granted by such of the railroad officials as are authorized to issue them, or by other public carriers, it is in deference largely to the feeling of the community in which they are exercising a public employment. The instances cannot be so numerous that any temptation will be offered to carelessness

in the management of their trains, or to an increase in their fares, in both of which subjects the public is interested. In such instances, one who is ordinarily a common carrier does not act as such, but is simply in the position of a gratuitous bailee. The definition of a common carrier, which is that of a person or corporation pursuing the public employment of conveying goods or passengers for hire, does not apply under such circumstances. The service which he undertakes to render is one which he is under no obligation to perform, and is outside of his regular duties. In yielding to the solicitation of the passenger, he consents for the time being to put off his public employment, and to do that which it does not impose upon him. The plaintiff was in no way constrained to accept the gratuity of the defendant; it had been yielded to him only on his own solicitation. When he did, there is no rule of public policy, we think, that prevented the carrier from prescribing, as the condition of it, that it should not be compelled, in addition to carrying the passenger gratuitously, to be responsible to him in damages for the negligence of its servants. It is well known that, with all the care that can be exercised in the selection of servants for the management of the various appliances of a railroad train, accidents will sometimes occur from momentary carelessness or inattention. It is hardly reasonable that, beside the gift of free transportation, the carrier should be held responsible for these, when he has made it the condition of his gift that he should not be. Nor, in holding that he need not be under these circumstances, is any countenance given to the idea that the carrier may contract with a passenger to convey him for a less price on being exonerated from responsibility for the negligence of his servants. In such a case the carrier would still be acting in the public employment exercised by him, and should not escape its responsibilities, or limit the obligations which it imposes upon him.

In some cases it has been held that, while a carrier cannot limit his liability for gross negligence, which has been defined as his own personal negligence, or that of the corporation itself where that is the carrier, he can contract for exemption from liability for the negligence of his servants. It may be doubted whether any such distinction in degrees of negligence, in respect to the right of a carrier to exempt himself from responsibility

therefor, can be profitably made or applied. *Steamboat New World* v. *King,* 16 How. 469. It is to be observed, however, that in the case at bar the injury occurred through the negligence of the defendant's servants, and not through any failure on the part of the corporation to prescribe proper rules or to furnish proper appliances for the conduct of its business.

We are of opinion that where one accepts purely as a gratuity a free passage in a railroad train, upon the agreement that he will assume all risk of accident which may happen to him while travelling in such train by which he may be injured in his person, no rule of public policy requires us to declare such contract invalid and without binding force. By the terms of the report there must, therefore, be          *Judgment for the defendant.*