# BOERING

*v.*

# CHESAPEAKE BEACH RAILWAY COMPANY.

RAILROADS; FREE PASSES.

1. In an action against a railway company by a wife to recover damages for personal injuries received while a passenger of the defendant and riding on a pass issued by the company, marked "complimentary," and containing a condition on its back exempting the company from liability for the results of its own negligence, testimony is admissible to show that the pass had not been issued as a mere gratuity but as part of a contract entered into between the husband of the plaintiff and the defendant upon a mutual consideration.

2. In such an action, testimony of the husband is not sufficient to show that the pass was not issued as a mere gratuity, when it is merely to the effect that the pass was given him with four other passes, one being issued to the general manager of the advertising service, of which the witness was the superintendent, another to the Baltimore agent of such advertising service, another to the witness, marked as being issued on account of advertising service, instead of complimentary, and the others to the wives of such recipients, all being issued at the same time and pursuant to the same conversation with the general passenger agent of the defendant, but where there is no attempt on the part of the witness to relate such conversation.

3. In the absence of testimony, in such an action, to show that the pass had been issued to the plaintiff under conditions sufficient to make her carriage one for hire in any legal sense, it is not error for the trial court to refuse to permit the husband of the plaintiff to show that she had not seen the condition printed on the back of the pass, and that she had never assented to his waiving her right to recover for injuries occasioned by the negligence of the company or otherwise; or to refuse to instruct the jury that they should disregard the conditions on the back of the pass and find for the plaintiff "if she never had seen or known, prior to

the accident, of the contents of the pass or ticket which her husband showed to the conductor as entitling her to ride on defendant's road."

4. One who is injured while a passenger of a railroad company by reason of the negligence of the company's agents, cannot recover damages from the company, if injured while riding on a free pass issued by the company as a mere gratuity, and containing a printed condition that the party accepting and using it assumes all risk of accident and damages to person or property, whether caused by the negligence of the company's agent or otherwise; such condition being valid and binding on the passenger.

No. 1207. Submitted October 21, 1902. Decided November 5, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury, in an action to recover damages for personal injuries.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This action was begun by John D. Boering and his wife, Mearlin G. Boering, to recover damages for injuries sustained by the latter whilst riding as a passenger upon the railway owned and operated by the Chesapeake Beach Railway Company.

The defense was that Mrs. Boering was carried free upon the express condition that she assumed the risk of accident caused by the negligence of the carrier's agents. The proof showed that Mr. and Mrs. Boering, accompanied by a friend, went to Chesapeake Beach on the morning of September 2, 1900, and returned on an evening train. As the train came into Chesapeake Junction it collided with some empty coaches on a siding. The collision was due to the fact that the switch had been left open, and was neither lighted nor guarded. Mrs. Boering was thrown down and trampled upon by some of the passengers, receiving serious injuries. She and her husband were carried free upon separate passes which had been given to him some time before by the defendant. These were in the shape of small, yellow, orna-

mented cards. The face of that issued to her had the following in printed and written letters:

" Chesapeake Beach Railway. 1900.

" Pass Mrs. J. D. Boering. Complimentary. Until December 31st, unless otherwise ordered.

" Not good unless countersigned by —

" A. H. Lewis.

Otto Mears, *President.*

" A. H. Lewis.

" No. C. 1539."

On the back the following condition was printed in small type:

" Not transferable.

" The person accepting and using this pass thereby assumes all risk of accident and damage to person or property, whether caused by negligence of the company's agents or otherwise.

" If presented by any other than the individual named thereon, the conductor will take up pass and collect fare."

Mrs. Boering, on cross-examination, testified that she knew her husband had the cards and that he purchased no tickets; that she had traveled on them several times during the summer in company with him; that she saw him show them to the conductor of the train on which she was injured; that she had not had either of them in her possession, and had not seen the condition assuming risk, etc.

Mr. Boering was called on behalf of the plaintiff, and testified that he was advertising solicitor and superintendent for " Moxley bill posting service." His testimony corroborated that of his wife and others respecting the accident. Afterwards he was recalled by the plaintiff, and, as recited in the bill, gave evidence tending to prove that at the same time the pass for Mrs. Boering was given him there were given to witness four other passes, two being to Mr. Shoemaker, general manager of the Moxley advertising service,

and Mrs. Shoemaker; one to Mr. Edwards, the Baltimore agent of the advertising service, and one to Mr. J. D. Boering, one of the parties named as plaintiff in this action, all being issued at the same time and pursuant to the same conversation with General Passenger Agent Lewis, of the Chesapeake Beach Railway Company.

He was then permitted to read his own pass which was similar to hers, save that it read " Pass Mr. J. D. Boering," and instead of " Complimentary," read — " Acc. Adv. Contract Moxley ad. service."

On cross-examination he said, that he had not shown the transportation to his wife because he thought it immaterial to her; that she had traveled with him upon this transportation, but he had never left her pass with her. On re-examination plaintiff propounded the following questions:

" Q. Mr. Boering, did Mrs. Boering ever see the conditions on the back of this ticket prior to the time of the accident — the ticket that was made out in her name?

" Q. Did Mrs. Boering ever authorize you to procure a free pass for her over the Chesapeake Beach Railroad?

" Q. Did Mrs. Boering ever assent to your waiving her right to a recovery from this company for negligence?

" Q. Did Mrs. Boering ever, in any way, assent to your procuring transportation for her over this railroad and relieving the company from any liability therefor on the grounds of negligence? "

Upon objections offered by the defendant, the witness was not permitted to answer the foregoing questions and plaintiff excepted.

At plaintiff's request the court gave instructions one and four as follows:

" 1. If the jury find from the evidence that the plaintiff Mearlin G. Boering, while on the cars of the defendant, was injured by the negligence of the defendant, and *that the plaintiff was riding on a ticket for which value had been given,* then your verdict should be for the plaintiff, and you are instructed that the defendant is not exonerated from liability in any degree from damages occasioned by such negli-

gence by reason of any circumstances or conditions with reference to the defendant railway company's compensation for transporting the plaintiff."

" 4. If the jury shall find in favor of the plaintiff, then in estimating damages you are to take into consideration the nature and extent of the injuries to the plaintiff and the pain attending thereupon and naturally incident thereto; the character and extent of her physical disability and the shock to her nervous system and results thereof resulting from such injuries, and return a verdict for what in money would be a fair recompense for the injuries received and suffering undergone by the plaintiff."

The following, numbered two and three, were refused:

" 2. The jury are instructed that if they find that the plaintiff's husband, John D. Boering, and the defendant were in negotiation for advertising work, and that the defendant, because of the advertising work said John D. Boering was to do for defendant, agreed to and did give said John D. Boering separate passes for himself and his wife, and that Mearlin G. Boering was lawfully on the car of the defendant at the time of the accident, and never had seen nor knew, prior to the accident, of the contents of the pass or ticket which her husband showed to the conductor as entitling her to ride on defendant's road, then if you find that the defendant was negligent in the management of its road, and the plaintiff Mearlin G. Boering was injured in consequence of said negligence and without fault on her part, your verdict should be for the plaintiff, and you should disregard the conditions on the back of the pass produced in evidence."

" 3. That if the jury shall find from the evidence that the plaintiff was injured by the negligence of the defendant while plaintiff was lawfully upon a train of the defendant railroad company, they are to find for the plaintiff whether she was traveling upon a free pass or not, or whether such pass had or not on the back thereof a stipulation against liability arising from negligence or otherwise."

The jury returned a verdict for the defendant, and from the judgment thereon the appeal has been taken.

*Messrs. Eugene Carusi & Sons, Mr. Charles F. Carusi,* and *Mr. Charles H. Merrilat* for the appellant:

1. A common carrier may not limit its common-law lia-bility for negligence to passengers by special agreement. This rule, founded on public policy, operates no less for the protection of gratuitous passengers than for passengers for hire. *Railroad Co.* v. *Lockwood,* 17 Wall. 374; *Galt* v. *Express Co.,* MacA. & Mack. 138; *Jacobus* v. *St. Paul Ry. Co.,* 20 Minn. 127; *Railroad Co.* v. *Stevens,* 95 U. S. 655.

2. By the great weight of authority in this country stipu-lations against liability of common carriers, for negligence, are void even in the case of gratuitous passengers. The ad-verse decisions are: *Wells* v. *Railroad Co.,* 24 N. Y. 181; *Perkins* v. *Railway Co.,* 24 N. Y. 196; *Bissell* v. *Railway Co.,* 25 N. Y. 443; *Kinney* v. *Railway Co.,* 32 N. J. 408; *Quimby* v. *B. & M. Ry. Co.,* 150 Mass. 365; *Muldoon* v. *S. C. Ry. Co.,* 35 Pac. Rep. 422; *Griswold* v. *N. Y. & N. E. Ry. Co.,* 53 Conn. 371. Of the foregoing the one New Jersey and all three of the New York decisions were by divided courts. Moreover, in the New York cases and the Massachu-setts case distinctions were sought to be made between or-dinary negligence and gross negligence, and between the negligence of the corporation itself and that of its agents. The invalidity of these distinctions, though helpful to the case at bar (in which the negligence was that of the defend-ant itself, and of the grossest kind), has been clearly pointed out in the Lockwood case (*supra*), which it is of interest to note came up for review from New York and resulted in a reversal, the Supreme Court distinctly refusing to follow the New York cases. The decisions of the State courts are other-wise unanimously against the validity of the stipulation. See *Bryan* v. *Missouri Pac. Ry. Co.,* 32 Mo. App. 228; *Jacobus* v. *Railway Co.,* 20 Minn. 125; *F. & P. M. Ry. Co.* v. *Weir,* 37 Mich. 122; *G. C. & F. Ry. Co.* v. *McGowan,* 65 Tex. 643; *Mobile & Ohio* v. *Hopkins,* 41 Ala. 486; *Alabama Gt. S. Ry. Co.* v. *Little,* 71 Ala. 614; *Rose* v. *D. M. V. Ry. Co.,* 39 Iowa, 246; *Illinois & Ont. Ry. Co.* v. *Reed,* 37 Ill. 484;

*Toledo, W. & W. Ry. Co.* v. *Beggs,* 85 Ill. 80; *Annas, Adm.*
v. *M. & N. Ry. Co.,* 67 Wis. 46; *Penn. Ry. Co.* v. *Henderson,*
51 Pa. St. 315 (drover's pass case, but followed up to full
extent in *Penn. Ry. Co.* v. *Butler,* 57 Pa. St. 335); *B., P.
& W.* v. *O'Hara,* 9 Am. & Eng. RR. Cas. 317, Pa., 1881;
*Camden & Atl. Ry.* v. *Bausch,* 7 Atl. Rep. 731; *Burnett* v.
*Railway Co.,* 176 Pa. St. 45; *Flinn* v. *P. W. & B. Ry. Co.,*
1 Houst. (Del.) 471 (drover's pass case, but unusually well
considered and shows court of same opinion as to purely
gratuitous passenger); *O. & M. Ry. Co.* v. *Selby,* 47 Ind.
471, 487; *Indiana Cent. RR. Co.* v. *Mundy,* 21 Ind. 48;
*Louisville, etc., RR. Co.* v. *Faylor,* 126 Ind. 126; *Welsh* v.
*Railroad Co.,* 10 Ohio St. 76; *Curran* v. *Railroad Co.,* 19
Ohio, 1; *Knowlton* v. *Erie RR. Co.,* 19 Ohio, 261. This
last case was decided against the passenger as the contract
was made in New York but decided (p. 263), that the Ohio
law is otherwise. A very interesting Maryland case, *Abell*
v. *W. Md. RR. Co.,* 63 Md. 433, held that recovery is not
based upon contract but sounds in tort irrespective of the
contract. The text-writers are almost unanimous in opposi-
tion to the carrier's right to limit liability on a free pass.
See Redfield on Carriers, 268; Thompson's Law of Carriers,
p. 200, Secs. 4, 7, 9; Shearman & Redfield on Negligence,
Sec. 268 *et seq.;* Cooley on Torts, 686; Wharton on Negli-
gence, 589, 592, 641; 1 Parsons on Contracts, 771 (note);
Schouler on Bailments and Carriers (2d ed.), Sec. 656.

3. Even those States which permit a common carrier to
limit its liability to gratuitous passengers require an ex-
press contract to that effect by the passenger. Of course,
such a contract may be verbal or may even be inferred from
circumstances, as from the acceptance of a pass and assent
to the stipulations or conditions under which it is issued,
but the decisions are unanimous in requiring such knowl-
edge and assent as a condition to holding the passenger bound
thereby. *New Jersey Steam Nav. Co.* v. *Merchants' Bank,*
6 How. (U. S.) 344. The New York courts, which we have
seen *supra* are among the minority in favor of relaxing the
common-law liability of carriers, are at one with the de-

cisions of the Supreme Court in requiring an express assent by the passenger to any stipulation against such liability. *Seyboldt* v. *New York, etc., Ry. Co.,* 95 N. Y. 562. See also *Brewer* v. *N. Y. C. Ry. Co.,* 124 N. Y. 59; *Coppock* v. *Long Island RR. Co.,* 89 Hun, 186; *Louisville Ry. Co.* v. *Nicholai,* 4 Ind. App. 119. In the case at bar the only evidence heard below established clearly that the plaintiff, while she knew she was traveling on " transportation " procured by her husband in conjunction with an advertising contract, never had had the transportation in her possession, and did not know there was any stipulation on the back thereof, did not assent to same, and authorized no one to do so for her. But it may be contended that, granting Mr. Boering had no authority, express or to be implied from the circumstances under which the passes were given him, to release Mrs. Boering's possible right of action for negligent injuries to her person, and that although, being ignorant of the stipulation in question, she could not be held to have ratified his unauthorized act, nevertheless that he being her husband might by virtue of the marital relation itself bind her without her knowledge or consent. Had the common law, which gave to the husband the right to reduce into possession the damages collected for injuries to the wife's person or property, and which logically included the right to release the damages before they were paid or suit was brought, remained unchanged, there might then be some warrant for holding that he could go further and stipulate away her right of action before it had accrued, he being the only person in interest; but under the married women's acts of the various States and of this District the sole right of action is given to the wife for torts committed against her, and it is the prevailing rule that she may bring suits in her own name alone, and the damages she might be awarded would belong to her and not to her husband. See *Rockwell* v. *Capital Traction Co.,* 17 App. D. C. 369. Her right to sue for damages for injury to her person inured solely to her benefit, and nothing is better settled than that the husband may be constituted the agent of his wife for the disposal of her separate prop-

erty, but that he is not such merely by virtue of the marital relation. See Am. & Eng. Encyc. (2d. ed.), title Agency, p. 958. See also *McLaren* v. *Hall,* 26 Iowa, 297.

*Mr. Frederic D. McKenney* and *Mr. John Spalding Flannery* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The errors that have been assigned specifically show forth every point that has been argued, and without reciting them, the several questions which they present for determination will be considered in the natural order of their arrangement.

1. The court did not err in refusing the second instruction relating to a supposed negotiation between plaintiff's husband and the defendant concerning advertising work as including the pass delivered to him for her use, for the reason that there was no evidence sufficient to raise such an issue. For the same reason the first instruction that was given, to the effect that if they should find that " the plaintiff was riding on a ticket for which value had been given, then their verdict should be for the plaintiff," could have been denied. There was a third person in the plaintiff's party, who went upon Mr. Boering's invitation, and for him alone a ticket was purchased and paid for. Plaintiff and wife were lawfully upon the train, but they rode upon passes for which no consideration was given. Boering himself was the only witness who testified to the receipt of the passes, and he fails to say that any arrangement between him and the defendant concerning advertising embraced the issue of free transportation to his wife. His own pass recites that it is on account of advertising contract with Moxley advertising service. This might mean that it was part of the consideration of that contract, or merely a courtesy extended because of their relations. However this may be is a matter of no importance because the injury sued for was not to him but his wife, whose pass recites that it was " complimentary."

Testimony was clearly admissible to show that the pass had not been issued as a gratuity, but as a part of a contract entered into between the parties upon a mutual consideration. The witness could have been interrogated with no other purpose than to bring the case if possible within the rule firmly established in *Railroad Co.* v. *Lockwood,* 17 Wall. 357, and *Railway Co.* v. *Stevens,* 95 U. S. 655. See, also, *Knott* v. *Botany Mills,* 179 U. S. 69; *The Kensington,* 183 U. S. 263. The negotiation, whatever it included, was conducted by him, yet all that he could say was, " that at the time the pass for Mrs. Boering was given him, there were given to witness four other passes, two being to Mr. Shoemaker, general manager of the Moxley advertising service, and Mrs. Shoemaker; one to Mr. Edwards, the Baltimore agent of the advertising service; and one to Mr. J. D. Boering, all being issued at the same time and pursuant to the same conversation with General Passenger Agent Lewis of the Chesapeake Beach Railway Company." This does not show that any contract was entered into between the parties relating to advertising and incidental transportation of either the witness or his wife. No attempt was made to relate the " conversation " which is said to have accompanied the delivery of the passes. The failure of her husband and co-plaintiff to make a definite statement concerning a matter completely within his knowledge ought not to operate to the plaintiff's advantage. From any point of view, however, the only rational inference from the witness' entire statement, is that there was no contract embracing the issue of the pass to his wife, but that it was a gratuity — a compliment as expressed on its face.

2. We are also of the opinion that there was no error in refusing to permit the plaintiff's husband to answer the questions set out in the bill of exceptions, the purpose being to show that Mrs. Boering had not seen the conditions printed on the back of the pass; that she had not authorized him to procure the pass; and that she had never assented to his waiving her right to recovery for injuries occasioned by the negligence of the company's agents or otherwise.

This conclusion covers also the error. assigned on the re-fusal to instruct the jury to the effect that they should· dis-regard the conditions on the back of the pass and find for the plaintiff, " if she never had seen or known, prior to the accident, of the contents of the pass or ticket which her husband showed to the conductor as entitling her to ride on defendant's road."

Now if the plaintiff had been able to show that the pass had been issued to her under conditions sufficient to make her carriage one for hire in any legal sense, then (assum-ing what we need not determine, namely, that she was not bound by the agency and knowledge of her husband), it would, undoubtedly, have been competent for her to show that her attention had not been called to the indorsed stipu-lation, and that she had never given her assent to it. *The Majestic,* 166 U. S. 375.

But, as before stated, the plaintiff was in no sense a pas-senger for hire, and hence it was of no consequence whether or not she knew of and had assented to the assumption of the risk of accident imposed by the indorsement. No mat-ter what may have been the authority of her husband to act for her in the original receipt of the pass, she accepted it and willingly availed herself of its privilege, and must, therefore, be held bound by its conditions. *Quimby* v. *Bos-ton and Maine RR. Co.,* 150 Mass. 365, 367; *Griswold* v. *N. Y., etc., RR.,* 53 Conn. 371; *Muldoon* v. *Seattle Ry. Co.,* 10 Wash. 311; *I. C. RR. Co.* v. *Read,* 37 Ill. 486.

The gift and the condition were interdependent and in-separable. She could not enjoy the gift without subjecting herself to the operation of the condition upon which it was made.

3. The facts of the case, as we have seen, preclude the idea of plaintiff's carriage as part of the consideration of a contract of which it is collateral, and hence are not governed by the rule of decision in *Railroad Co.* v. *Lockwood,* and other like cases. Undoubtedly, the principle of decision in *Railroad Co.* v. *Derby,* 14 How. 468, can have no applica-tion, because there the plaintiff rode on the special invitation

of the, president of the company without any stipulation or condition whatever.

The question which they do present, and upon which the decision must turn, is this: Could the defendant, in extending the privilege of gratuitous passage to the plaintiff, couple it with a condition lawfully binding her to assume the risk of accident caused by the negligence of its agents?

This question is an open one in this jurisdiction, and its difficulty is attested by the conflicting decisions of many of the State courts of last resort, which, with commendable industry and skill, have been collated on the briefs of counsel.

It would serve no useful purpose to recite or review those decisions,.the majority of which, it may be conceded, support the contention of the plaintiff.

The ground of that contention is, that the occupation of a common carrier is of such a nature that it would conflict with settled public policy to permit one, under any circumstances, to stipulate against liability for injuries resulting from negligence in the performance of its duties.

It cannot be denied that the duty of the common carrier is to carry its passengers in safety, and that this duty is not dependent upon contract alone; that the duty is in the nature of a public one and that the public interest is directly involved in its performance.

For these reasons, a sound, well-established rule of public policy will not permit the carrier to impose special terms of an unreasonable nature (as, for example, the assumption of the risk of damage occasioned by the negligence of the carrier or its agents), upon one who, practically compelled to avail himself of its services, nevertheless pays something in the shape of valuable consideration therefor. To uphold a condition exempting the carrier from liability for negligence under such circumstances would strongly tend to induce a relaxation of that high degree of care essential to the safety of the multitudes who daily avail themselves of the services of common carriers. But sound and expedient as this rule of public policy undoubtedly is, under the con-

ditions before stated, we cannot bring ourselves to the conclusion that the reasoning on which it is founded has any application to the case of one who accepts a free passage as a gratuity.

A strictly free passenger does not higgle with the carrier and consent to the condition in order to obtain a reduced rate of passage, nor does he consent to it in order to obtain a reasonable rate of freight for property which he must accompany or follow to its destination. There is no inequality between him and the carrier in the transaction, for he is not one who, being practically compelled to take passage, and having the right to demand it upon a reasonable consideration, is unable to resist the imposition of special terms. He is a mere seeker and recipient of favor, and ought to be estopped to repudiate a condition upon which that favor was conferred. So to hold — to use the appropriate words of Judge Putnam in the circuit court in a recent and like case — " conforms the law to the moral sense which justly holds those who accept gratuities and acts of hospitality to perform the conditions on which they were granted." *Duncan* v. *Maine Central RR. Co.,* 113 Fed. Rep. 508.

Our conclusion accords also with that of the Supreme Judicial Court of Massachusetts in a well-considered case, and the reasons therefor are so well stated in their opinion that we shall quote from it at length: " There can be no difficulty in the adjustment of terms where passes are solicited as gratuities. * * * The instances cannot be so numerous that any temptation will be offered to carelessness in the management of their trains, or to an increase in their fares, in both of which subjects the public is interested. In such instances, one who is ordinarily a common carrier does not act as such, but is simply in the position of a gratuitous bailee. The definition of a common carrier, which is that of a person or corporation pursuing the public employment of conveying goods or passengers for hire, does not apply under such circumstances. The service which he undertakes to render is one which he is under no obligation to perform, and is outside of his regular duties. In yielding to the

solicitations of the passenger, he consents for the time being to put off his public employment, and to do that which it does not impose upon him. The plaintiff was in no way constrained to accept the gratuity of the defendant; it had been yielded to him only on his own solicitation. When he did, there is no rule of public policy, we think, that prevented the carrier from prescribing, as the condition of it, that it should not be compelled, in addition to carrying the passenger gratuitously, to be responsible to him in damages for the negligence of its servants. It is well known that, with all the care that can be exercised in the selection of servants for the management of the various appliances of a railroad train, accidents will sometimes occur from momentary carelessness or inattention. It is hardly reasonable that, besides the gift of free transportation, the carrier should be held responsible for these, when he has made it the condition of his gift that he should not be. Nor, in holding that he need not be under these circumstances, is any countenance given to the idea that the carrier may contract with a passenger to convey him for a less price on being exonerated from responsibility for the negligence of his servants." *Quimby* v. *Boston and Maine RR. Co.,* 150 Mass. 365, 370, 371.

After careful consideration of the opposing decisions by learned courts for whose opinions we have the highest respect, we are constrained to say that we fail to see any substantial grounds for invoking a rule of public policy that would permit the free pass in this case to stand as a contract of carriage, and strike down the condition without which it would not have been given. The plaintiff had no right to demand carriage without consideration; the carrier was under no obligation to furnish it. Instead of purchasing an unconditional ticket, as was done for the friend who traveled upon their invitation, she accepted free transportation upon express condition. To regard the promise to carry, for which there was no consideration upon any theory of the law of contract, as a contract for carriage, and deny the obligation of the express condition upon which it was granted,

seems to us to run counter to the time-honored and paramount rule of public policy that upholds the cherished right of freedom of contract.  In a recent case, the Supreme Court of the United States said, after declaring that there was no disposition to depart from the salutary doctrine of the Lockwood and Stevens cases:  "At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare."  *B. & O. RR. Co.* v. *Voigt,* 176 U. S. 498, 505.  That case involved the contract between a carrier and an express company exempting the carrier from liability for damages to the messenger of the express company, that might be caused by the negligence of the carrier.

The stipulation, having been consented to by the messenger, was upheld as within the freedom of contract and not opposed to any rule of public policy.  In our opinion, the case at bar comes clearly within the principle of that decision.

Finding no error, the judgment will be affirmed, with costs. It is so ordered.                    *Affirmed.*

A writ of error to the Supreme Court of the United States was prayed and allowed.