GERMAINE A. MONTALBANO, as Administratrix of the Estate of CHARLES L. GHYSELINCK, Deceased, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, May 3, 1944.

*Donald M. Mawhinney* and *Gerald H. Henley* for appellant.

*Salvador J. Capecelatro* for respondent.

DOWLING, J. The plaintiff's intestate was killed in a derailment accident on Gulf Curve at Little Falls, N. Y., on the night of April 19, 1940. He left a minor daughter but no widow surviving. His administratrix brought action to recover the pecuniary damages suffered. The complaint charged that the intestate's death was caused '' solely through the carelessness, recklessness, gross and wanton negligence of the defendant, its agents, servants and employees, \* \* \* in that the defendant through its engineer wantonly, carelessly and negligently and with reckless disregard for the life of said deceased, drove said engine at a very high rate of speed contrary to the \* \* \* signals and other appliances of safety which \* \* \* were at or near the place of accident ''. The defendant in its answer denied liability and pleaded two separate and complete defenses, viz. (1) that the intestate's death was caused by his own negligence, (2) that at the time of the accident '' plaintiff's intestate was using a certain pass issued by defendant, one of the conditions of which was that, in consideration for the issuance of the same to the intestate, intestate voluntarily assumed all risks of accident, and expressly agreed that defendant company should not be liable under any circumstances, whether of negligence of itself, its agents or otherwise, for any injury to his person, or for any loss or injury to his property.''

On the trial it was agreed that the intestate had been in the defendant's employ from 1925 to the date of his death. That he was a qualified signal mechanic but at the time of his death, and for some period prior thereto, he was working and had been working as a signal helper at Williams Bridge in New York City. That he worked forty-eight hours per week which gave him Saturdays and Sundays off. That he spent his weekends with his daughter who lived with a relative in Syracuse, N. Y. That his pass permitted him to travel without payment of fare on most of the trains running between New York and Buffalo over the defendant's main line. That on April 19, 1940, he boarded the Lake Shore Limited at New York, using his pass for transportation, and was on his way to Syracuse when the accident occurred. That the pass issued to the intestate in 1940 contained, among others, the following condition, namely: '' In consideration of receiving this free pass, each of the persons named thereon, using the same, voluntarily assumes all risk of accidents and expressly agrees that the Company shall not be liable under any circumstances, whether of negli-

gence of itself, its agents, or otherwise, for any injury to his or her person, or for any loss or injury to his or her property; and that, as for him or her, in the use of this pass, he or she will not consider the Company as a common carrier, or liable to him or her as such.''

The proof showed that the speed limit at Gulf Curve was 45 miles per hour for westbound trains; that at a point 800 feet east of the point of derailment, which was the apex of the curve, the engineer was warned by the road foreman of engines, Bayreuther, who was on the engine at the time in the discharge of his duties, that he better make another brake pipe reduction of speed, or he would hit the curve too fast. The speed at that moment was 61 miles per hour but there was yet time to reduce the speed to 45 miles per hour before hitting the critical point of the curve. The engineer took hold of the instruments used in making brake pipe reductions in speed and reduced the speed to 58 or 59 miles per hour and no more. At the critical point of the curve, the engineer suddenly closed the throttle and the engine and most of the coaches left the track and turned over. The engineer and the fireman were killed and many passengers were either killed or injured. Why the engineer failed to reduce the speed of the train to 45 miles per hour, the evidence does not disclose. There was proof that the engine, the cars and their appliances were inspected at Albany and were found to be in good condition. It also appeared that the train was 21 minutes late at the time of the accident. The defendant offered no proof as to contributory negligence on the part of the intestate.

At the close of the evidence the learned Trial Justice held as a matter of law that there was no proof that the pass issued to the intestate was part of his remuneration for services rendered to the defendant and that the pass did not release the defendant from liability if the intestate's death was caused by the gross negligence of the defendant, its agents and servants. The court defined both ordinary and gross negligence to the jury and instructed them that the plaintiff could not recover unless the jury found that the accident was caused by the gross negligence of the defendant. The jury found that the accident was caused by the gross negligence of the defendant and they awarded the plaintiff a verdict for $25,000 including interest. The court denied the defendant's motion to set aside the verdict and for a directed verdict in its favor. From the order denying its motions and from the judgment entered on the verdict, the defendant has appealed.

We think the court erred in charging as follows: " I say to you also as a matter of law that such an agreement between the Railroad Company and the person who has been issued one of these passes with this clause upon it — with a contract which purports to relieve the Railroad Company from gross negligence, as I have defined it to you — such a contract is against the public policy of the State of New York and is unenforceable and invalid." To this charge the defendant excepted. It is against the public policy of the State to allow public service corporations to exempt themselves absolutely from liability for negligence in their contracts for hire to carry goods or passengers where no choice is given to the shipper or passenger of obtaining full or limited liability. (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, 414, 416; *Conklin* v. *Canadian-Colonial Airways, Inc.*, 266 N. Y. 244, 247–248.) It is not against the public interest to allow a railroad company to exempt itself absolutely from liability from all kinds of negligence in a pass issued gratuitously to one of its employees. (*Anderson* v. *Erie R. R. Co.*, 223 N. Y. 277, 280, and cases cited; *Wilder* v. *Pennsylvania R. R. Co.*, 245 N. Y. 36, 41.) The pass in question is sufficiently comprehensive in its language to embrace every description of accident attending railroad travel. It makes no exception in respect to the degree of negligence. (*Perkins* v. *New York Central Railroad Company*, 24 N. Y. 196; *Ulrich* v. *N. Y. C. & H. R. R. R. Co.*, 108 N. Y. 80.)

Concededly the intestate was an employee of the defendant at the time of his death. If the pass issued to him was part of his contract of employment, and not a mere gratuity, the defendant could not relieve itself from negligence by so providing in the pass. (Railroad Law, § 64.) If his pass was a mere gratuity, the reverse would be true. Whether the pass was part of the intestate's contract of employment was, under all the circumstances, a question for the jury and it was error to take that question from the jury. (*Vroom* v. *New York Central & H. R. R. R. Co.*, 129 App. Div. 858, 861, affd. 197 N. Y. 588; *Gill* v. *Erie Railroad Co.*, 151 App. Div. 131, 135–136.)

The judgment and order should be reversed on the law and a new trial should be granted.

All concur, except LARKIN, J., not voting. Present — CUNNINGHAM, P. J., DOWLING, HARRIS, McCURN and LARKIN, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.