Leonard L. Finz, J.
In this action, submitted to the court on an agreed stipulation of facts, the ultimate question to be decided is whether the plaintiff has an actionable cause against the defendant railroad. If the determination of the court is affirmative, an assessment of damages will be directed, at which time the provisions of the agreed stipulation will be applied. Conversely, if the determination is negative, the complaint must be dismissed, and that which is contained in the stipulation will abate.
Although most of the issues in this dispute can be resolved by the application of fairly established principles of law, the many interesting questions raised, concerning the application of the law to the facts, warrant a more detailed judicial appraisal.
The plaintiff, an employee of the defendant railroad, requested and received a “ pass ” which entitled her to passage on the defendant carrier. "While a passenger, an accident occurred causing the plaintiff to sustain certain personal injuries, which, in substance, serve as the basis of the instant action. The “ pass ” which admittedly was used regularly by the plaintiff for some years prior, and up to the time of the accident, and which was executed by the plaintiff, reads in part: ‘1 The person accepting and receiving it [the “pass”] thereby assumes all risks of accidents to person or property. * * * I accept the above conditions.
(signed) Mrs. C. T. Litter.”
The first question to be determined is whether the “ pass ”, as urged by the plaintiff, was issued pursuant to an employment contract (and therefore as consideration additional to wages), or whether it was a gratuitous gesture, as alleged by the defendant. For if issued under the aegis of the former (employment contract), the exculpating language contained therein (that is, plaintiff “ assumes all risks ”) would be a nullity. (Federal Employers’ Liability Act, § 5; U. S. Code, tit. 45, § 55.) Conversely, if the latter (a gratuity), the language of the exculpation would have to withstand the scrutiny of judicial testing. (See Boll v. Sharp & Dohme, 281 App. Div. 568; Wolinsky v. Queens Beauty Inst., 56 Misc 2d 596, affd. 59 Misc 2d 246.)
In resolving the first issue raised, it is necessary to determine whether the subject “ pass ” was issued pursuant to an agreement borne out of collective bargaining, which agreement would set forth the specific wage and other rights of railroad employ *454 ees of the defendant. (Such employment contracts are the controlling agreements governing labor and management under the Railway Labor Act, the terms of compensation of which are fixed through the machinery of collective bargaining.)
A close reading of approximately 130- pages of the many documents that comprise the original and subsequent side-bar agreements (the agreements between the Long Island Rail Road Company and Freight Handlers, Express and Station Employees, which were in effect at the time of the accident) omits any reference to the issuance of “ passes ” as part of an employee’s consideration. Since the total contract of employment covering the plaintiff is silent as it relates to “ passes ” to employees, the court, by application of even the most liberal rules of construction, must conclude, that the issuance, by the defendant railroad of the subject pass was gratuitous. In addressing itself to a similar situation, the court in McDougall v. Lehigh Val. R. R. Co. (21 Misc 2d 946, 947) held that the “ pass ” was a gratuity since the defendant was under no obligation to issue a “pass” to the plaintiff. On the specific subject, the court stated: “Passes may be more commonly granted than they were a generation ago, but it is still the case that neither railroad— the employer of the plaintiff’s husband nor the defendant was under an obligation to issue the pass. The language of the report of the Emergency Board (May 15, 1954) appointed by the President to investigate disputes between certain carriers and certain employees’ organizations is appropriate: ‘ The Board doubts if free transportation comes within the language of the Railway Labor Act relating to ‘ ‘ rates of pay, rules and working conditions.” It is also of the belief that, on the merits, this subject should not be required to be the subject of collective bargaining. It is a gratuity except when directly related to the employees’ services and as such should he left under the control of the Carriers’ ”. (Italics supplied.) (See also Martin v. Greyhound Corp., 227 F. 2d 501; Warner v. New York Cent. R. R. Co., 23 A D 2d 642.)
Having determined that the “pass ” issued to the plaintiff was a gratuity, the second question to be determined is whether the terms and conditions of the pass would be a bar to recovery by the plaintiff by reason of the exculpatory language contained thereon. To resolve this issue it is necessary to inquire whether the plaintiff at the time of the accident was in fact working within the scope of her employment; for if she was so engaged, the Federal Employers’ Liability Act, by application of section 5 (U. S. Code, tit. 45, § 55) would shield her from the language *455 exculpating the defendant, in which event the said language would yield to the application of section 5, thereby being a nullity and unenforceable. But here again, the plaintiff can receive no benefit from the FELA, since she was not in fact “ injured while working within the scope of her employment ” at the time of the accident.
Stripped of FELA protection, the sole question remaining is whether the language contained in the exculpatory agreement is sufficient m law to defeat plaintiff’s cause. In addressing themselves to this issue, both parties cite the language of this court in Wolinsky v. Queens Beauty Inst. (56 Misc 2d 596, 598, affd. 59 Misc 2d 246) wherein this court stated: “ The general rule of law mitigates against a contractual undertaking that would operate to absolve a wrongdoer from the consequences of his tortious conduct unless the exculpatory instrument is unequivocal and clear in its language and construction.” (Emphasis supplied.)
That which mandates the construction of the exculpatory agreement in Wolinshy, to the favor of the plaintiff, however, does not exist in the instant matter. For here, the plaintiff assumed the very risk of an accident which in fact did occur. As stated by the Appellate Division, Second Department, in Hopkins v. Long Is. R. R. Co. (21 A D 2d 814, 815): “In our opinion, the pass by its expressly stated condition barred plaintiff’s recovery based on the defendant’s ordinary negligence, despite the fact that the stated condition did not contain a clause specifically exculpating defendant from liability ‘ by reason of negligence ’ (Kansas City So. Ry. Co. v. Van Zant, 260 U. S. 459; Quimby v. Boston & Maine R. R. Co., 150 Mass. 365; Rogers v. Kennebec Steamboat Co., 86 Me. 261).” (See, also, Northern Pacific Ry. Co. v. Adams, 192 U. S. 440, 453; Bergerson v. Great Northern Ry. Co., 158 Minn. 20; Mayer v. Temple Props., 307 N. Y. 559.)
Although not specifically raised, the provisions of a “ pass ’ ’, if effective, would serve to exonerate the defendant railroad from gross as well as ordinary negligence. (Montalbano v. New York Cent. R. R. Co., 267 App. Div. 617.)
The plaintiff, therefore, having elected to request, and in fact, having accepted a gratuitous privilege to ride the defendant’s road is bound by its terms of exculpation no matter its harsh result. To rule otherwise would serve to discourage the issuance of other gratuitous ‘ ‘ passes ’ ’ to employees who request, and receive, daily and continuing benefits by its use. A contrary finding would constitute a complete disregard of the *456 limits of liability upon which an employer, within this posture, would have a right to rely.
Accordingly, the action of the plaintiff is dismissed. The action of the plaintiff’s husband being derivative in nature, must similarly fall.