**James F. GUERNICK, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION,
Defendant.**

**CONSOLIDATED RAIL CORPORA-TION, Third-Party Plaintiff,**

v.

**LEWIS LANDSCAPING, LTD. and Gregory Chiaramonte, M.D., Third-Party Defendants.**

**No. 82 Civ. 6109 (WCC).**

United States District Court, S.D. New York.

May 8, 1984.

Elkind, Flynn & Maurer, P.C., New York City, for plaintiff James F. Guernick; Michael Flynn, New York City, of counsel.

Donald F. Ayers, New York City, for defendant Consolidated Rail Corp.; Dudley M. Thompson, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff James F. Guernick ("Guernick") commenced the instant action seeking to recover damages for injuries he allegedly suffered on February 10, 1982 when he slipped and fell on a ramp at the New Hamburg Railroad Station. Guernick contends that defendant Consolidated Rail Corporation ("Conrail") acted negligently in allowing patches of ice to build up on the ramp, and that this negligence was the proximate cause of his injuries. The case is currently before the Court on Conrail's motions to interpose an affirmative defense based upon an exculpatory clause contained in a free transportation pass given to plaintiff, and for summary judgment based upon that defense. For the reasons set forth below, the motions are denied.

For purposes of these motions, the relevant facts are not in dispute. At the time of the accident, plaintiff was an employee of Conrail. He had been issued a free transportation pass by Conrail, which he used on February 10, 1982 to take a Conrail train from his work place in Grand Central Station to his home in New Hamburg. On the front of Guernick's pass was the legend, "valid only on Harlem and Hudson suburban trains." On the back of the pass, under a heading entitled "conditions," was the clause at issue here:

> The user expressly assumes all risk of personal injury or death and loss of or damage to property and releases the Company and its officers, agents and employees from all liability therefor, whether or not caused by the negligence of the Company, or its officers, agents and employees, whether done within the scope of their employment, or otherwise.

After arriving at the New Hamburg Station on February 10th, Guernick disembarked from the train, proceeded along the platform and then walked down the ramp which led away from the platform. He claims that just as he reached the bottom of the ramp, he slipped and fell on a patch of ice.

The parties agree that New York law, not federal law, governs the enforceability of the exculpatory clause contained in Guernick's free pass because the pass authorized travel only along specific, wholly intrastate train lines. *See New York Central Railroad Co. v. Mohney*, 252 U.S. 152, 155–57, 40 S.Ct. 287, 288–89, 64 L.Ed. 502 (1920); *Olsen v. Draper*, 112 F.Supp. 859, 861 (E.D.N.Y.1953). Moreover, there is no dispute that under New York law, an exculpatory clause, such as the one contained in Guernick's pass, is enforceable so long as the pass is issued gratuitously to the employee. *See Montalbano v. New York Cent. R. Co.*, 267 App.Div. 617, 47 N.Y.S.2d 877, 880 (App.Div.1944); *see also Thompson v. National Railroad Passenger Corp.*, 621 F.2d 814, 820 (6th Cir.1980) (same under federal law). Where, however, the pass is provided to the employee as part of his employment contract, the

exculpatory clause will not be enforced. *See Montalbano,* 47 N.Y.S.2d at 880; *see also Thompson,* 621 F.2d at 820.

The Court must thus resolve two issues in order to determine the validity of Conrail's proposed affirmative defense: (1) Did Conrail issue the pass to Guernick gratuitously and not as part of his employment contract? And, (2) if the pass was given free to Guernick, was the February 10th accident within the scope of the pass's exculpatory clause? Only if both questions can be answered affirmatively will Conrail's proposed defense be successful. The Court concludes that, even assuming a positive answer to the first inquiry,[1] Gernick's accident nevertheless does not fall within the ambit of the clause.

In *Bukowski v. Metropolitan Trans Auth.* 120 Misc.2d 110, 465 N.Y.S.2d 485 (Sup.Ct.1983), the court was faced with a situation analytically identical to that posed by the instant case. The plaintiff in *Bukowski* was injured when he slipped and fell on a piece of frankfurter roll while descending the stairway from the platform at the Jamaica Station of the Long Island Railroad ("LIRR"). At the time of the accident, Butowski, a yard master employed at the defendant's Babylon Yard, was on his way home from work, having travelled from Babylon to Jamaica by using a pass issued to him by the defendant. The LIRR interposed the same affirmative defense that Conrail seeks to assert in the present action—*i.e.,* that the plaintiff should be barred from suing the railroad for his injuries because of an exculpatory clause contained in the free pass used by him. The exculpatory language in *Bukowski's* pass was identical to that contained in the pass used by Guernick in this action.

In rejecting the LIRR's affirmative defense, the court stated:

> While it has been held that gratuitous passes similar to the one in question operate to release the railroad from liability arising from injuries sustained in the course of passage, the language of this pass cannot be interpreted as a general release of all claims which might arise as a result of injuries sustained on railroad property. In order to bar recovery, the pass provisions must be applicable and operative at the time of the accident. Here, the express language of the pass executed by the LIRR states that the "user" assumes the risk of liability. At the time plaintiff was injured, he was no longer a passenger and his presence at Jamaica Station was not dependent on his use of the pass. It is undisputed that the area in which plaintiff was injured was opened to the general public and was not restricted to ticket holders or pass holders.

*Id.* 465 N.Y.S.2d at 486; *see Schiller v. Pennsylvania Railroad Co.,* 192 F.Supp.

---

1. If the answer to the first question was material, the Court could not have resolved it at this stage of the proceeding. The collective bargaining agreement between the Brotherhood of Railroad Signalmen, the union to which Guernick belonged, and Conrail contained the following clause:

   > Employees and their dependents shall be given the same consideration in the granting of rail transportation as is granted to other employees and their dependents holding comparable positions in conformity with policies and regulations in effect governing the granting of rail transportation.

   Conrail argues that because this clause does not mandate that Guernick be furnished a pass by the railroad, but merely provides that members of the Brotherhood will be treated in the same manner as other comparably situated employees, the Court should rule that Guernick was not given his free pass pursuant to the union em-

   ployment contract. While I am inclined to agree with both defendant and the federal court that recently held in a similar situation arising under federal law that "this mere possibility of a free pass is not sufficient consideration to make [Guernick] a passenger for hire rather than a gratuitous passenger," *Thompson,* 621 F.2d at 822, I am unable to make such a ruling under New York law. New York courts have held without exception that the question whether a railroad employee's pass is part of his employment compensation or is merely a gratuity is an issue of fact to be resolved by the jury in light of all the surrounding circumstances. *See Olsen,* 112 F.Supp. at 861–62; *Kroehling v. City of New York,* 270 App.Div. 909, 61 N.Y.S.2d 474, 475 (1946); *Montalbano,* 47 N.Y.S.2d at 880. Thus, even if plaintiff's accident had been within the scope of the exculpatory clause, any decision on the validity of Conrail's defense would have to await the trial of this action.

502, 505 (S.D.N.Y.1961) (pass holder injured in public concourse of Pennsylvania Station prior to boarding train not precluded from suit by exculpatory language of pass because accident occurred before plaintiff reached point at which pass determined her right to use defendant's facilities; injury occurred in area open to public). These concerns are equally applicable to Guernick's claim.

 Like *Bukowski*, Guernick was not in the strict sense a "user" of his pass at the time he was injured.[2] He had left the train and was in an area open to all persons, whether they were passengers on one of Conrail's trains or not. Absent a clear indication in the pass to the contrary, the appropriate demarcation line of Conrail's disclaimer of liability for its own negligence must rationally be drawn at the edge of the area in which persons are required to hold either a ticket or a pass. Outside of that boundary, the pass holder is in the same position as any other member of the public; however, once he crosses that line, the employee's pass grants him a benefit— *i.e.,* free transportation—to which he would not otherwise be entitled unless he held a ticket. Consequently, at that point the Court can justify a decision to enforce defendant's disclaimer of liability—assuming that such a disclaimer is consistent with public policy—for the disclaimer is a *quid pro quo* for the free transportation benefit that defendant has conferred upon the pass holder.

If the effective scope of the pass's exculpatory clause were broader than this, the Court would be hard pressed to provide a principled basis for its choice of any particular boundary: Should the disclaimer be effective until the employee leaves the platform? Until he leaves the area surrounding the platform and tracks? Until he reaches the parking lot? Or, until he leaves railroad property? There is simply no rational justification for choosing among these various alternatives. Although the final option, the railroad property boundary, approaches being arguably defensible,

I would be loath to adopt such a broad interpretation of the scope of Conrail's exculpatory clause, absent clear and explicit language in Guernick's pass that this was intended, in light of the uniform disfavor with which such clauses are ordinarily viewed. However, as noted above, the language in Guernick's pass gives no such clear indication. Indeed, it is far more susceptible of the narrow interpretation I have adopted above.

For these reasons, I hold that the exculpatory clause in Guernick's pass does not extend to bar him from suing to recover for injuries allegedly suffered as a result of the accident underlying this case. Accordingly, Conrail's motions are denied. Trial will proceed as scheduled on May 29, 1984.

SO ORDERED.

---

**2.** It is axiomatic that courts will construe exculpatory clauses very strictly.